James M. HOPKINS and the State Industrial Fund, Petitioners,

v.

In the Matter of the Death of Andrew Jackson GIBSON, Willie May Gibson and the State Industrial Court of the State of Oklahoma, Respondents.

No. 40733.

Supreme Court of Oklahoma.

Oct. 6, 1964.

As Corrected Oct. 8, 1964.

Mont R. Powell, Moraul Bosonetto, Oklahoma City, for petitioners.

Dick Bell, Seminole, and Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

WILLIAMS, Justice.

The primary question to be determined in this original action is whether there was introduced in the trial in the State Industrial Court any competent evidence reasonably tending to sustain the order of that court awarding death benefits to claimant and her three minor children.

The record discloses that on Wednesday, April 20, 1960, Andrew J. Gibson, claimant's husband, was employed as a carpenter by his son-in-law, petitioner Hopkins; that on such date Gibson and another employee, Sisk, were "cleaning up" around a house under construction by Hopkins; that Gibson and Sisk would place broken bricks in a wheelbarrow and then dump the bricks into a fill for a porch; that in dumping the bricks it was necessary to push the loaded wheelbarrow which weighed 150 to 175 pounds, up a 2″ x 8″ board, 12 to 14 feet long, the top of which was approximately 18 inches high; that these two employees took turns pushing the wheelbarrow; that as Gibson was pushing the last load up the ramp, the wheelbarrow slipped off the ramp, causing Gibson to fall to the ground; that after a short rest the employees picked up the bricks that had fallen from the wheelbarrow and by hand threw them into the fill for the porch; that next, they shoveled some sand into the fill, after which they quit work for the day; that they did not work the next day (Thursday) for the reason that concrete had been poured for the porch and had not dried; that on April 22, (Friday), they removed the forms from the concrete and moved certain equipment, including overhead saws from that house to a new location; that one of the saws

weighed approximately 350 pounds; that Gibson did not work on April 23 (Saturday), but on the evening of April 24 (Sunday), Dr. G. was called to see him; that after Dr. G. examined him, he had Gibson placed in the hospital at about 11 o'clock that night where he died some 13 hours later.

For reversal of such award petitioners advance two propositions. The first is that "There is no competent evidence in the record to support the finding of the State Industrial Court".

The order of the State Industrial Court, in part, provides:

"On April 20, 1960, in Pottawatomie County, Oklahoma, Andrew Jackson Gibson was in the employ of respondent, James M. Hopkins, engaged in a hazardous occupation within the meaning of the Workmen's Compensation Law of the State of Oklahoma, and on said date suffered an accidental personal injury, arising out of and in the course of his employment, consisting of an injury to his heart, and thereafter on April 22, 1960, and April 23, 1960, said Andrew Jackson Gibson while engaged in heavy manual labor which was more than he was accustomed to doing in his regular employment, suffered additional heart damage, due to strain and over-exertion in doing said labor; that as a result of said accidental injury to his heart the said Andrew Jackson Gibson died on April 25, 1960."

Petitioners argue that the evidence shows that Gibson did not work on April 23 and that he was accustomed to doing the work that he did on April 20 and 22. We agree with such contention, but we do not agree with petitioners' further contentions that such findings were material findings of fact and that since such were unsupported by competent evidence, the award should be vacated. We herein consider these latter contentions together with petitioners' further contentions that the hypothetical question claimant's attorney proposed to Dr. S.

was based upon an incorrect hypothesis and, therefore, of no probative value.

On cross-examination of Dr. S. petitioners' attorney proposed the following hypothetical question:

"Q: Doctor, let me ask you a hypothetical question, and will you notice the facts as I have outlined them here. Assuming that on April 20th, 1960, claimant, Andrew Jackson Gibson, was a man sixty years of age. He was employed by James M. Hopkins as a carpenter. In addition to regular carpenter work in such employment, after the houses were completed, it was a part of his duties to fill in porches ready for concreting, then to move their tools from one location to another. On the 20th of April, 1960, the claimant and another employee were picking up broken brick which was to be used as material for filling porches preparatory to pouring concrete and placing it in a wheelbarrow which was rolled over the yard. After the wheelbarrow was approximately filled, they would then roll it up an incline and dump the brick into a form in to form a fill, thus eliminating the necessity of hauling the broken bricks away and also providing a portion of the fill. This incline was made by placing a piece of lumber two inches by eight inches and approximately twelve or fourteen feet in length on an eighteen inch form with the other end on the ground. Mr. Gibson and the other employee would take turns in pushing the wheelbarrow. About two or two-thirty in the afternoon of April 20th, 1960, Mr. Gibson was pushing a wheelbarrow of these broken pieces of brick up the incline when the wheelbarrow rolled off the two by eight causing Mr. Gibson to fall to the ground striking the ground on his right side. Upon being asked by the other employee if he were hurt, he said no, but let's rest a minute. They smoked a cigarette then went back to work. They picked up the brick that had

fallen out of the wheelbarrow, put them in the form, shoveled a little sand in on the brick and continued working until quitting time. No work was done on the following day which was Thursday because the concrete was too wet to remove the forms. On Friday they went back, removed the forms from the concrete, cleaned up around the house, moved the tools and the overhead saws from one house to another in order to be ready for work on the following Monday. They quit work about four p. m. on Friday. They did not work Saturday. About noon on Saturday the claimant complained to his wife he had pain in his chest. Sometime later Sunday afternoon or evening a doctor [Dr. G.] was called. Claimant was taken to the hospital. The records show he was admitted to the hospital at eleven p.'m. Sunday night. He died about twelve fifty-five a. m.—he died about twelve fifty-five p. m. Monday afternoon. Under these facts and circumstances, is it your opinion claimant's death is in any way related to the injury?"

The testimony was that the wheelbarrow when loaded weighed 150 to 175 pounds and that one of the saws weighed 350 pounds.

In answer to such question Dr. S. testified:

"A: Even then, I would assume that the coronary thrombosis first began at the time of the fall, but that at that particular time it was not bad enough to cripple him, but that the clot probably gradually extended until on Saturday he began to notice the effects of it more severely."

Previously on cross-examination Dr. S. had testified:

"Q: Now, in your statement you have said it is clear also the heavy exertion with the wheelbarrow precipitated the coronary occlusion which led to his death. Now that is the thing on which you base your opinion, the heavy exertion with the wheelbarrow; is that right?

"A: Primarily, plus the excitement of the fall.

"Q: Would the fact that this man had this atherosclerosis which you have mentioned have anything to do with the infarction?

"A: Absolutely, yes.

"Q: Is it your opinion or would you have an opinion as to whether or not had he not had the atherosclerosis that this fall would have resulted in a heart attack or a myocardial infarction?

"A: Did you say that if he did not have it?

"Q: Yes, if he did not have it.

"A: I would feel certain that it would not have resulted in a heart attack.

"Q: Doctor, would it make any difference how this man fell or what he fell on or the height from which he fell?

"A: At his age and undoubtedly with atherosclerosis it would not have made much difference. It wouldn't take much of a fall to precipitate a heart attack in a man of his age, so I don't think it would make much difference.

"Q: Now, Doctor, assuming, and I have read you a portion of the testimony, that after the fall all Mr. Gibson did was to when asked if he was hurt and he said no he wasn't hurt but let's rest a minute, they smoked a cigarette; he got up and went back to work, performed exactly the same work that the other employee did, shoveled sand, picked up brick, made no complaints; that on Friday he went to work and worked the same hours the other employee did without any complaint whatever, is it still your opinion that the fall had any precipitating effect on the myocardial infarction?

"A: Yes, because there are several branches of the two main coronary arteries which can supply blood to the heart, and the heart may function for

days and even support considerable exertion while the heart muscle is dying out from the occlusion of one branch, and in my opinion, the infarction extended or extended or increased in size due to retrograde thrombosis of the coronary artery. In other words, if he had gone to the hospital immediately after this fall, he might have been saved by anticoagulants to prevent further extension of the clot. I think the clot extended and grew backwards to occlude other branches and finally caused his death.

"Q: When do you think the clot formed, Doctor?

"A: I think it began to form·at the moment of this fall.

"Q: Would it make any difference whether he fell on his right side or left side?

"A: It would make no difference.

"Q: Would it make any difference whether he fell on soft ground or hard ground?

"A: It would not.

"Q: Just the fact that he fell?

"A: That would be enough.

"Q: That is all, in your opinion, was necessary to say his death resulted from the fall?

"A: Yes, mam."

Dr. G., witness for claimant, testified on direct examination that "Wednesday night after the accident he [claimant] hurt in the chest. Thursday night and also Friday night he hurt in the chest. * * * I saw him Sunday when the pain became more severe."

Dr. G. testified on cross-examination as follows:

"A: As I said before, that we know about how long the man was having pain, how long he had been coming sick.

"Q: You said we know, who is we?

"A: Well, myself.

"Q: You know how long the man had been having pain?

"A: Yes.

"Q: How do you know?

"A: I asked him.

"Q: You asked the man himself how long he had been having pain?

"A: Yes.

"Q: Did you ask any other member of the family that question?

"A: I don't recall.

"Q: At this time, that is your memory, that you asked the man how long he had been having pain?

"A.: Yes."

*     *     *     *     *     *

"Q: And then he died of an arteriosclerotic disease?

"A: Complicated."

As noted in the above quoted testimony, Dr. S.'s opinion was that the fall resulted in Gibson's death. Such opinion was not premised on Mr. Gibson's having worked on April 23 (Saturday) or subsequently to his fall having engaged in heavy manual labor which he was not accustomed to doing. Neither did Dr. S. change or modify that opinion when confronted with the facts from petitioners' viewpoint as set forth in their hypothetical question hereinabove quoted.

In addition to the testimony of Dr. S., Dr. G. testified, of effect, that Gibson told him the pain in his chest commenced Wednesday night next following his fall in the afternoon.

The medical experts testifying for petitioners stated that the fall had no connection with Gibson's death and that he died of natural causes.

In the fourth paragraph of the syllabus of the case of Wade Lahar Construction Company v. Howell, Okl., 376 P.2d 221, we held:

"The State Industrial Court is the sole judge of the credibility of witnesses, be they lay or expert, appearing before it, and of the weight and

value 'to be' accorded' to their testimony."

 In Boardman Company v. Eddy, Okl., 363 P.2d 821, in the first and second paragraphs of the syllabus we held:

"Whether death of a workman was caused by an accidental injury arising out of employment or resulted from a fatal internal condition of a spontaneous origin, presents a question of fact for the determination of the State Industrial Court, whose finding on such issue will not be disturbed on review if reasonably supported by competent medical evidence. * * *

"The death benefit provisions of the Workmen's Compensation Act should be accorded a broad and liberal construction in determining the question of dependency."

In view of the above quoted and noted testimony given by Drs. S. and G., and under applicable decisions of this Court one cannot say that there is no competent evidence in the record herein reasonably tending to support the order of the State Industrial Court.

The second proposition of petitioners is that "The court erred in admitting incompetent and hearsay evidence over objection."

All the testimony to which petitioners refer in this connection is that given by the claimant. We do not consider it necessary to determine the competency thereof.

That Mr. Gibson sustained the fall was not denied. The testimony of Drs. S. and G. to which reference has been made hereinabove was not in any manner or to any extent based upon the testimony to which objection was made.

If we were to assume the correctness of the position of petitioners as to the impropriety in admitting the testimony of which they complain, we still would not find it necessary to vacate the award herein involved. In Ranney Rig Bldg. Co. v. Givens, 141 Okl. 195, 285 P. 23, 25, we said:

" * * * We think the evidence, although incompetent under the record here presented, was not sufficient to set aside the award, as it does not appear that the Industrial Commission's order was based thereon, and there is sufficient other evidence to support the award."

We find no merit in either of petitioners' contentions.

Award sustained.

BLACKBIRD, C. J., and DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.

HALLEY, V. C. J., and JACKSON, J., dissents.