**MEADOW GOLD DAIRIES, a Division of Beatrice Foods, Petitioners,**

v.

**Sharon K. OLIVER and the State Industrial Court, Respondents.**

**No. 46812.**

Supreme Court of Oklahoma.

April 29, 1975.

Rhodes, Hieronymus, Holloway & Wilson by Ben A. Goff, Oklahoma City, for petitioners.

Harley E. Venters, Oklahoma City, and Dick Bell, Seminole, for respondents.

HODGES, Vice Chief Justice:

William K. Oliver (Oliver), died July 17, 1972, as the result of heart attack in the course of covered employment. The State Industrial Court en banc affirmed a trial judge's order which awarded death benefits to the surviving dependent heirs who had suffered pecuniary loss. Petitioner (Meadow Gold), seeks review and vacation of this award.

Meadow Gold denied jurisdiction of the State Industrial Court on the grounds that: deceased was not engaged in hazardous employment at time of death; occurrence of accident, or that the injury was sustained in course and scope of employment. Meadow Gold also alleged death was not the proximate result of injuries but resulted from causes over which it had no control. Meadow Gold affirmatively alleged deceased had no dependent heirs at law and therefore, the claimants are not entitled to recover death benefits.

The Claimant, Sharon K. Oliver, is the surviving widow of deceased. The minor claimant is deceased's daughter from a prior marriage which was terminated by divorce in 1965. The decree placed the minor's custody in the mother. Oliver was required to pay ($75.00) monthly child support. The order was complied with and Oliver exercised visitation rights until 1966, when the mother remarried and moved the child to California. Oliver continued to provide gifts, clothing, etc. for the child. The minor was adopted without Oliver's consent. The child and mother returned to Oklahoma in 1972.

Prior to employment with Meadow Gold, Oliver had worked as a parts salesman for an automobile agency. After physical examination, Oliver began employment with Meadow Gold as an ice cream route salesman in April, 1972. In June, 1972, he became a milk route salesman. This involved longer hours and heavier work. Oliver was required to load his truck about 4:00 A.M. with milk products, drive to and make delivery stops at various retail stores, and keep records of sales and deliveries in balance with Meadow Gold. Milk products were in racks which weighed approximately 50 pounds per unit. These were unloaded onto a dolly three racks at a time, wheeled into a store and unloaded for display and sale.

During the two weeks prior to his death, Oliver had worked six days a week, totaling 89 hours regular and approximately 42 hours overtime. This was necessary because no relief man was available, and Oliver's supervisor was on vacation and unable to help. Oliver also belonged to an army reserve unit which met in Shawnee, Oklahoma, for training exercises. For several days prior to demise, Oliver appeared tired, complained of pain in arms and experienced chest pain. He worked on Friday, and Saturday, and attended reserve training on Sunday.

On Monday morning Oliver went to the Meadow Gold plant to load his truck. This was done by off-loading racks of milk products from a transport truck onto his delivery truck. The driver of the transport testified that Oliver gave no indication of physical disability or emotional upset during approximately the one hour required to load. However, the sales supervisor for Meadow Gold talked with Oliver about 4:00 A.M., and he was upset because the loading dock was blocked. He was concerned because of lateness in loading.

An ice cream route salesman for Meadow Gold saw Oliver at a Norman store about two hours before his death. He complained of chest pains, tiredness, and needing some time off. He was advised by this witness to see a doctor. This witness again saw and talked briefly with him at a store in Moore two hours later when he was going to his truck. The witness went into the store and, after finishing his business, returned to talk with Oliver but found him lying on the truck floor. He was unable to find a pulse. An ambulance was called and Oliver was pronounced dead upon arrival at the hospital.

Oliver's brother, who was also employed by Meadow Gold, testified Oliver had been disturbed over a sizeable shortage in his accounts. The matter was not concluded, however, until after deceased's demise, when a missing ticket was found which cleared the shortage.

The fact deceased was upset because of the account shortage was corroborated by his widow. She also testified that during the week preceding his death, Oliver was anxious and thought of nothing except his

job. He arrived home each night, ate, and immediately went to bed because he was overly tired. On Wednesday prior to his death, Oliver complained of pain in his arms, and chest pain which was attributed to indigestion. On Friday, he worked fourteen hours, came home tired, pale, complaining, and overworked. Prior to his death, Oliver had experienced no severe illnesses and had only rarely missed work.

Post mortem pathological diagnosis disclosed Oliver suffered from severe coronary atherosclerosis, with mild, generalized arteriosclerosis. Cause of death was certified as acute occlusion of the anterior descending branch of the left coronary artery.

The Claimant introduced deposition testimony of Dr. P., given in response to a lengthy hypothetical question based upon matters reflected by testimony. Autopsy findings disclosed the existence of a fresh coronary thrombosis. Findings were consistent with history of sudden death occurring in a man apparently suffering chest pain coupled with complaints of pain and noticeable distress just prior to death. The findings indicated death resulted from coronary occlusion which was precipitated by work deceased performed.

Meadow Gold introduced the deposition of Dr. McC., whose opinion also was derived from consideration of the autopsy report and evidentiary circumstances outlined. The physician stated in his opinion death resulted from ventricular tachycardia, secondary to acute thrombosis of left main coronary artery, due to severe coronary atherosclerosis, associated with generalized atherosclerosis. The doctor stated there was no relationship between deceased's work and death.

On cross-examination the doctor acknowledged the arteriosclerotic condition made deceased more susceptible to vascular accident, possibly incited by some sort of exertion, and that strain will precipitate a heart attack, and accumulated fatigue can be a factor. However, the doctor considered the factor of fatigue from long and tiring work a classic non sequitur as concerned cause of heart attack. He stated, under certain circumstances physical strain and fatigue could precipitate coronary thrombosis in a diseased heart, but the physician did not consider Oliver actually had a thrombus. He acknowledged, however, a diseased condition could progress to the point routine work combined with the disease could cause infarction.

This physician stated a sudden supreme exertion could precipitate a heart attack so it can be said there exists a relationship between work activity and ensuing myocardial infarction. But, when a man falls dead from infarction while carrying on usual occupation at his normal work pace, infarction cannot logically be blamed on work done at that time.

Meadow Gold contends this award is unsupported by medical evidence, because claimant's medical witness assumed facts contrary to evidence. Its argument is that the pattern of proof required to establish accidental injury from work-connected strain requires; (1) lay testimony concerning nature of work being performed when injury occurs; (2) expert testimony showing exertion attendant upon activity disclosed by evidence was sufficient to produce the strain to which disability, or death, is attributed. King v. Honegger Const. Co., 476 P.2d 72 (Okl.1970).

Meadow Gold insists in seeking cause of death, consideration cannot extend beyond events of the day without abandoning legal concept of cause. It is argued no evidence showed Oliver was fatigued on the day of death, and there was no evidence of heavy physical effort just prior to death. Meadow Gold argues that the evidentiary basis for the physician's assumption that deceased expended physical effort over long hours and was chronically fatigued, assumed facts not in evidence. It concludes that no evidence showed job-related fatigue was a causative factor of death, whereas Meadow Gold's evidence showed Oliver's fatigue resulted solely from the

medically established, underlying heart condition.

The basis of this argument is the claim that there was no evidence showing claimant was fatigued the day of death, or to show heavy physical exertion immediately prior to death. No authority supports the claim that legal concept of cause must be determined solely in view of events transpiring the day of death. Meadow Gold's argument simply ignores other relevant evidence, and the conclusion relative to Dr. P.'s assumptions as to cause is unwarranted.

■■■ This argument, or claims similar in substance, have been considered many times. The factors advanced as conclusive were disposed of by our decision in H. J. Jeffries Truck Line v. Grisham, 397 P.2d 637 (Okl.1964). That decision held specifically: (1) disability attributable to heart disease is compensable when either the sole or contributing cause of pathology is antecedent strain arising out of and in course of employment; (2) although pre-existing disease constitutes a pre-disposing cause, internal injury of sudden, unusual, unexpected nature may be accidental in character; (3) external causation may be attributable to ordinary work which is performed in a normal manner without intervention of an unusual incident connected therewith; (4) accidental injury need not be attributed to one particular event, but may arise progressively from cumulative effect of a series of exertion episodes.

■■■ The other argument, relating to asserted lack of evidence showing job fatigue or strenuous physical labor prior to death, to provide the basis for Dr. P.'s assumptions also was disposed of by Grisham, supra. This decision notes that strain may develop from interaction of numerous variable factors. Strain or over-exertion relates entirely to the person injured, as to whom the principal ingredient is found in unusual effect, rather than from unusual cause.

■■■ The basis for expert opinion testimony, which fixed the causal connection between deceased's employment and death, substantially incorporated and was entirely consistent with the facts which claimant's proof fairly tended to establish. H. J. Jeffries Truck Line v. Grisham, supra.

Whether death resulted solely because of deceased's diseased heart, or was precipitated by cumulative effect of a series of episodes causing strain, was a question of fact for determination of State Industrial Court upon consideration of skilled expert testimony. Avco Corporation v. Swartzlander, 470 P.2d 340 (Okl.1970).

Meadow Gold also contends the minor claimant was not a dependent under provisions of 85 O.S.1971 § 22, since the parent-child relationship was terminated by adoption as provided by 10 O.S.1971 § 60.-16(2). Upon adoption by the step-father Oliver's rights and obligations under the divorce decree, including obligation to support, were severed and he had no legal obligation to support claimant. In re Adoption of Greer, 463 P.2d 677 (Okl.1970). Meadow Gold asserts since there was no legal obligation for support claimant was not a dependent. It is also argued that because both heirship *and dependency* are required to show entitlement to an award, under Fox Vliet Wholesale Drug Co. v. Chase, 288 P.2d 391 (Okl.1955), and similar cases, the award to this claimant must be vacated.

■■ In Wallace v. State Industrial Court, 406 P.2d 488 (Okl.1965), this problem provoked review of Chase, supra, and related decisions. In Wallace we pointed out this court had lost sight of the original concept of the death benefits act initially expressed in Capitol Steel and Iron Co. v. Fuller, 206 Okl. 638, 245 P.2d 1134 (1952), by engrafting a requirement that a claimant of benefits also prove partial dependency as prerequisite to recovery. Our holding in the Wallace case expressly rejected this requirement and overruled the

principal announced in Chase, supra. Settled decisional law now declares basic requisites for establishing right to death benefits are: proof of heirship within 85 O.S. 1971 § 3.1(1) and a showing of pecuniary loss. The amount of pecuniary loss is not significant. Wallace v. State Industrial Court p. 493, supra.

 Within the provisions of the Act, 85 O.S.1971 § 1 et seq., pecuniary loss is the criterion for determination. Wallace v. State Industrial Court, supra. A minor child of a deceased workman is presumed to have sustained pecuniary loss as a result of death, even though deceased had been unable to contribute to the minor's support. Armour & Company v. Strickland, 413 P. 2d 320 (Okl.1966). No logical reason or statutory authority declares that inability to continue the support of a minor should inure to Meadow Gold's benefit.

In addition to the presumption, that the minor child sustained pecuniary loss as the result of Oliver's death, there was evidence deceased had contributed toward his daughter's welfare, and that the mother anticipated receiving further aid for the child's benefit. Whatever right or expectation this minor held for future assistance, including the possibility of future inheritance from an estate created by Oliver, was foreclosed at the moment of her natural father's demise. Natural children, even after adoption, are eligible to inherit from both their natural and adopted parents. Estate of Marriott, 515 P.2d 571 (Okl.1973). Whether deceased's death resulted in pecuniary loss to his minor daughter presented a question of fact for determination by the State Industrial Court. A finding upon this issue supported by competent evidence will not be disturbed on review. National Zinc Co. v. Parker, 442 P.2d 488 (Okl.1968); Finefrock v. Rice, 426 P.2d 675 (Okl.1967).

Award sustained.

All Justices concur.