FALCON DRILLING COMPANY and The Travelers Insurance Company, Petitioners,

v.

Virgina Mae THOMPSON and the Oklahoma Workers' Compensation Court, Respondents.

No. 55362.

Supreme Court of Oklahoma.

Sept. 22, 1981.

As Corrected Sept. 29, 1981.

---

7. *Reirdon v. Wilburton Board of Education,* 611 P.2d 239, 240 (Okl.1980).

Jerry H. Holland, Sanders, McElroy & Carpenter, Tulsa, for petitioners.

John Sprowls, Pauls, Valley, for respondent, Virginia Mae Thompson.

LAVENDER, Justice.

Virginia Mae Thompson and Carl W. Thompson filed a claim in the Workers' Compensation Court for income benefits for the death of Roy Thompson, deceased. Roy Thompson was killed in an auto accident on February 6, 1979, while working for Falcon Drilling Company, petitioner herein. The claimants were the natural mother and step-father of the deceased. Petitioner defended this claim on the grounds that the claimants were not actually dependent on the deceased employee at the time of his death as required by the Workers' Compensation Act.

An order was entered by the trial judge finding that both claimants were actually dependent on the deceased at the time of his death, awarding each $45.00 per week (total $90.00) based on the wages of the deceased and the maximum compensable rate. On appeal to the Workers' Compensation Court en banc, the order was affirmed, as modified, in that it was found that Virginia Mae Thompson was the only claimant actually dependent on the deceased employee, awarding her $90.00 per week, and finding that Carl W. Thompson was able-bodied capable of earning his own living and on February 6, 1979, he was working full time. Petitioners perfected their appeal to this court; the cause was assigned to the Court of Appeals, Division 1. There, the order was vacated on the grounds that the stepfather's salary, calculated at the time of the employee's death, would be counted toward the total amount of support received by the claimant/mother and that the evidence showed the claimant had not received one-half (½) or more of her support from the employee, as required by the Workers' Compensation Act. Rehearing was denied by the Court of Appeals on May 5, 1981. Claimant sought writ of certiorari which was previously granted.

The central issues in this case are whether the claimant is entitled to benefits, and if so, how much.

■ Settled law declares that the question of dependency for death benefits in a worker's compensation case is a question of

fact to be determined by the Workers' Compensation Court and that the findings of that court will not be disturbed on review when reasonably supported by competent evidence. *Meadow Gold Dairies v. Oliver*, 535 P.2d 290 (Okl.1975); *Finefrock v. Rice*, 426 P.2d 675 (Okl.1967); *Jones v. Loving*, 363 P.2d 512 (Okl.1961); *Robberson Steel Co. v. State Industrial Court*, 354 P.2d 211 (Okl.1960). We are called upon in the case at bar, however, to review the amendments to the Workers' Compensation Act regarding death benefits and determine applicability of the amended act to the findings in this case. Such application of findings to statutes relative thereto will be corrected by this court, if erroneous. *American Tank and Equipment Co. v. Gray* 167 Okl. 494, 30 P.2d 901 (1934).

The applicable statutes and their pertinent provisions to be used in determining whether the claimant is entitled to benefits are as follows:

85 O.S.Supp.1980 § 3.1 which provides: "A. In respect to death benefits under the Workers' Compensation Act, the following definitions shall apply:
(1) *'Actually dependent'* means:

. . . . .

c. Any other person dependent in fact upon the employee and *refers only to a person who receives one-half (½) or more of his support from the employee;*

. . . . .

(6) 'Parent' means a mother or father, a stepparent, a parent by adoption or parent-in-law, if actually dependent in each case except as provided in paragraph (1) of this section.
B. All questions of relationship and *dependency shall be determined* as of the time of injury for the purposes of income benefits for injury, and *as of the time of death* for the purposes of income benefits for death." (Emphasis supplied.)

85 O.S.Supp.1980 § 22.8(a)(6) provides: "To each parent, *if actually dependent,* twenty-five percent (25%) of the average weekly wages the deceased was earning subject to the provisions of subparagraphs (c) and (d) of this paragraph. (Emphasis supplied.)

A review of the evidence as found in the record is needed to determine the applicability of the above quoted statutes to that evidence.

In 1975, the claimant/mother, Virginia Thompson, had a nervous breakdown. Her mental condition required a doctor's care. Soon thereafter, Roy Thompson, the deceased employee, quit school to work in the oil fields. Carl Thompson, step-father of the deceased, had previously worked in the oil fields and continued to do so full-time until May 1977. At this time, he quit work completely to care for his wife, Virginia. He remained out of work until October of 1978. During this time, Roy Thompson had apparently been giving his father the paychecks he (Roy) had earned while working in the oil fields. The record contained check stubs with Roy's name on them dated from January 1, 1978, through September 5, 1978. Deposit slips from Carl Thompson's checking account with corresponding amounts to those on Roy's check stubs were also contained in a record. Deposit slips dated after September 5, 1978, showed cash deposits in varying amounts. Testimony by Carl Thompson indicated Roy had moved out of the family home to a different town to live with a co-worker in October of 1978 and that Roy had opened his own checking account at a bank in that town. Mr. Thompson also testified that Roy had given him approximately $500.00 in cash in each of the months of November and December 1978 and January 1979. In October of 1978, in the month Roy moved out, Mr. Thompson had gone back to work part-time, missing some days and weeks at a time to care for his wife. Further testimony by Mr. Thompson indicated that by January of 1979, he was working full-time and had continued to do so until June 1979, when he again took off work completely for approximately three months due to his wife's condition. He also testified that he had made a little over $3000.00 for the year of 1978 and that

contributions given to him by Roy amounted to over $10,000.00 for that same year (as evidenced by the check stubs, deposit slips and testimony of cash given).

Roy Thompson, while working for Falcon Drilling, was killed in auto accident on February 6, 1979. Virginia and Carl Thompson subsequently filed their claims for income benefits in the Workers' Compensation Court.

According to the statutes quoted above, a claimant-parent would have to show that he or she received one-half or more of his or her support from the deceased employee, as of the time of death, to be entitled to receive twenty-five percent of the average weekly wage the deceased was earning (subject to limitations) as a death benefit. The parties urge conflicting views with respect to two parts of these statutes, one concerns the meaning of support, the other concerns the time-frame in which dependency is determined.

■ Petitioners first contend that a "family unit" concept should be applied in determining the amount of support a claimant receives exclusive of the deceased's contributions, i. e. pool all the claimant's family resources and determine whether the deceased's contributions equal an amount which is 50% or more of the pooled amount. In the case at bar, Carl and Virginia consisted of the family unit. In January 1979, Carl contributed approximately $1500.00 in support compared to $500.00 received from the deceased that month. It is petitioner's contention that it is clear, when using this concept, that the claimant did not receive one-half or more of her support from the deceased employee. The "family unit" concept seems reasonable, however, we need not incorporate such an approach into these statutes. A simpler test to determine what constitutes the claimant's support can be taken from subparagraph (9) of § 22.8(a). There, the legislature sets out the guideline to determine whether a person ceased to be actually dependent after he has started receiving benefits. They speak of "income from all sources exclusive of worker's compensation income benefits." By analogy,

where the support test is to be used in an original determination of dependency, the Workers' Compensation Court should total the claimant's income from all sources exclusive of the deceased's contributions, then determine whether those contributions equal one-half or more of such income.

When should these comparisons of support be measured? Petitioners contend that it is a clear and unambiguous mandate by the legislature in 85 O.S.Supp.1980 § 3.1B that the determination of whether the claimant received one-half or more of his support from the deceased employee must be made *at the time* of the deceased employee's death, which is February 6, 1979, in the case at bar. This court has stated that when the intent of the legislature is plainly expressed in an enactment, there is no room for statutory construction and that the statute must be followed without further inquiry. *Johnson v. Ward*, 541 P.2d 182 (Okl.1975); *Kasishke's Estate v. Oklahoma Tax Commission*, 541 P.2d 848 (Okl.1975). However, we have also stated that in ascertaining legislative intent, construction which would render the legislation absurd is to be avoided and that statutes should be construed with a reasonable and sensible construction. *Udall v. Udall*, 613 P.2d 742 (Okl.1980); *City of Norman v. Liddell*, 596 P.2d 879 (Okl.1979). In our view, it would be absurd to interpret the phrase "as of the time of death" in § 3.1B to include only those particular circumstances which are in existence during any one day, i. e. the date of death. Petitioners themselves used the month preceding the employee's death as a time frame in which they compared amounts of support given to the claimant.

The claimant on the other hand contends that although the income of the step-father was unusually high during the period from January through June, 1979 (which would include the date of death), such circumstances were temporary. It is her contention that in determining whether she was dependent, all the facts and circumstances should have been considered. Such facts and circumstances include the irregularity

of the step-father's full time work in the years preceding the death of the deceased employee and for periods thereafter and the evidence that the step-father had contributed approximately $3000.00 in 1978 compared to the deceased's contribution of approximately $10,000.00 for the same year.

■ What did the legislature mean by the phrase "as of the time of death" in § 3.1B? Again, we look to subparagraph (9) of § 22.8(a) for guidance to determine the legislative intent. As previously noted, this subparagraph addressed the issue of when a claimant ceased to be actually dependent after he has started receiving benefits. The legislature speaks of annual income of the claimant and the annual contribution amount of the deceased employee. We find that it would be a reasonable interpretation of the language in § 3.1B that the determination of dependency should include those facts and figures from the one-year time frame which precedes the date of the employee's death. We also analogize from the federal Internal Revenue Code § 152(c) and (e) and Treasury Regulation § 1.152–1 thereunder which define "dependent" with respect to personal exemptions and set guidelines for determining the amount of support a taxpayer is required to contribute to a person being claimed as a dependent. The time frame used by the Internal Revenue Service is a calendar year.

■ In applying the above interpretations of 85 O.S.Supp.1980 § 3.1 to the evidence as found in the record, we find that the decision of the Workers' Compensation Court en banc, entitling the claimant Virginia Thompson to death benefits, to be sustained by competent evidence. We do not address the issue of whether the claimant Carl Thompson would be entitled to benefits because he did not appeal the en banc order within the statutory time limit. See 85 O.S.Supp.1980 § 3.6B.

■ One issue remains. Petitioners urged in their initial appeal to this court that if the court found claimant entitled to benefits, the compensation rate assessed by the Workers' Compensation Court en banc was in excess of that provided by law. A review of that court's order shows that continuing benefits were to be $90.00 per week and that 56 weeks had accrued from the date of death, entitling the claimant to a lump-sum payment of $5,040.00.

The pertinent sections used to compute the amount of income benefits for death where parents are claimants are as follows:

85 O.S.Supp.1980 § 22.8(a)(6) which provides:

"To each parent, if actually dependent, twenty-five percent (25%) of the average weekly wages the deceased was earning subject to the provisions of subparagraphs (c) and (d) of this paragraph."

85 O.S.Supp.1980 § 22.8(c) provides:

"Maximum income benefits for death. For the purposes of this section, the average weekly wage of the employee shall be taken as not more than the average weekly wage of the state. In no case shall the aggregate weekly income benefits payable to all beneficiaries under this section exceed the maximum income benefits that were or would have been payable for total permanent disability to the deceased."

85 O.S.Supp.1980 § 22.6 provides in part: "Limitation. The compensation payments under the provisions of the Workers' Compensation Act shall not exceed . . . Ninety Dollars ($90.00) per week beginning January 1, 1979 . . . for permanent total disability . . . . The average weekly wage in this state shall be determined annually as of July 1 of the preceding calendar year by the Oklahoma Employment Security Commission and shall be used to establish maximum benefits under the Workers' Compensation Act for injuries occurring during a twelve-month period, which period shall begin on the first day of the fourth month after publication by the Oklahoma Employment Security Commission . . . . "

Petitioners contend that confusion in computing the amount of income benefits for death is occasioned by the provision in 85 O.S.Supp.1980 § 22.6. That subsection,

quoted above, sets the limit on permanent total disability payments at $90.00 per week for accidents occurring from January 1, 1979, through December 31, 1979. This provision would be used in determining the maximum entitlement set out in the second sentence of 85 O.S.Supp.1980 § 22.8(c) quoted above). The first sentence of § 22.8(c) provides, however, that for the purposes of calculating income benefits for death, the average weekly wage of the employee shall be taken as not more than the average weekly wage of the state. The "average weekly wage of the state," which is set by the Oklahoma Employment Security Commission, is stated in the handbook of the Workers' Compensation Court to be $198.50 for the year of 1979. We will assume that this figure is correct since neither party objected to the figure or offered other evidence.

Subparagraph (6) of § 22.8(a), quoted above, provides that each parent, if actually dependent, is entitled to 25% of the average weekly wages the deceased was earning. This subparagraph is subject to paragraph (c) of § 22.8, however. That paragraph sets out the two separate limitations discussed above.

In the case at bar, the average weekly wage of Roy Thompson was $512.00 per week. Twenty-five percent of this amount is $128.00 per week. This figure is subject to the limitation mandated in the first sentence of paragraph (c) of § 22.8, however, in that the average weekly wage of the employee *shall be* taken as not more than the average weekly wage of the state, which was $198.50 for 1979 as stated above. Twenty-five percent of this amount is $49.63, as petitioners correctly point out.

Both the Workers' Compensation Court and the Workers' Compensation Court en banc set $90.00 as the maximum compensable rate for income benefits in the case at bar, no doubt using the second sentence of paragraph (c) of § 22.8 and the limitation amount set out in § 22.6. This maximum figure would be applicable, for instance, where both parents would qualify as actually dependent, thereby entitling them, as a class of beneficiaries (using the first sentence as a limitation) to a total of 50% of the $198.50 average weekly wage of the state, or $99.25 per week. The second sentence would then be applied to limit that amount to the $90.00 maximum set out in § 22.6.

Claimant contends that she is entitled to the $90.00 amount. She urges that a liberal interpretation should be given to these limiting provisions of the Workers' Compensation Act because of the Act's remedial nature, citing cases where this court has stated such a proposition. This court has also stated, however, that the rule requiring liberal construction of remedial statutes is subordinate to the general principle that all statutes should be construed and applied in such a manner as to accomplish the legislature's intent. *Watkinson v. Adams*, 187 Okl. 432, 103 P.2d 498 (1940). It is our view that the legislature intended both sentences of paragraph (c) in § 22.8 to be applicable as limitations in computing the amount of income benefits for death.

In applying these limitations to the case at bar, we find that the claimant, Virginia Mae Thompson, is entitled to $49.63 per week and modify the order of the Workers' Compensation Court en banc accordingly.

Opinion of the Court of Appeals, Division 1, vacated. Order of the Workers' Compensation Court en banc modified and affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.