2003 OK 70

**In the Matter of the Death of Michael Dean BRYAN, Deceased,**

**Kristy Jo Johnson, Alix Coy Bryan, and Michaela BRYAN, Petitioners,**

v.

**Becky A. Bryan, Kendra Marie Graham, and Derick Anthony Graham, and The Workers' Compensation Court, Respondents,**

**Maslonka & Associates, Inc., and Wausau Insurance Company, Employer and Insurance Carrier.**

No. 98,286.

Supreme Court of Oklahoma.

July 8, 2003.

Brandon J. Burton, T.R. Banks, Oklahoma City, OK, for Petitioners.

W.E. Sparks, Tulsa, OK, for Respondents.

KAUGER, J.

¶1 The question presented is whether the trial court erred in awarding workers' compensation death benefits to the employee's surviving spouse and stepchildren who were not living with the employee at the time of his death. We hold that the evidence supports the trial court's determination that the employee's surviving spouse and stepchildren are entitled to workers' compensation death benefits, and that the trial court's award of death benefits to the employee's natural children should remain undisturbed.

## FACTS

¶2 On November 12, 2001, Michael Dean Bryan [employee] was killed in a work related accident while working for Maslonka and Associates, Inc. [employer] in Valliant, Oklahoma. The employee died instantly when a wire on an electrical pole touched his chest, electrocuting him.

¶3 Becky A. Bryan [spouse] filed a notice of death and claim for compensation in the workers' compensation court on December 3, 2001, seeking death benefits as the employee's wife. She also asserted that her two minor children [stepchildren] relied upon the employee for support. On March 18, 2002, Kristy Jo Johnson [companion] also filed a notice of death and claim for compensation, seeking death benefits as the employee's wife. She alleged that the employee was also survived by their minor child, and an unborn child [natural children].

¶4 A hearing on the claims for death benefits was held on September 7, 2002. At the hearing, it was undisputed that the employee was covered by the Workers' Compensation Act[1] and that he sustained a fatal work related accidental injury. The only questions before the trial court were the status of the spouse, the stepchildren, the companion, and natural children, as statutory

---

**1.** Title 85 O.S.2001 § 1, et seq.

claimants for death benefits and the amounts to be awarded.

¶ 5 The spouse testified that she had two minor children from a previous marriage when she married the employee on May 6, 1996. She stated that, even though she received child support from the children's biological father, the employee supported her and the stepchildren.[2] The spouse admitted that, at some point in time, she and the employee separated and on September 1, 1999, she secured a permanent protective order against the employee and his mother.[3] Nevertheless, she insisted that he continued to support her and her children by giving her anywhere from fifty to a hundred dollars a week in cash.[4] On cross examination, the spouse acknowledged that a divorce petition was filed 10 days prior to the employee's death, but that she was never served with any papers concerning a divorce.

¶ 6 The companion did not personally appear at the hearing, but her deposition testimony was admitted into evidence. In the deposition, she admitted that she had never been married.[5] However, she testified that she started having a relationship with the employee in September of 1999, and that they began living together sometime just before their son was born in September of 2000.[6] The companion discovered that she was about four weeks pregnant with her second child on November 28, 2001, and she stated that the employee was the father of this child as well.

¶ 7 In an order filed September 12, 2002, the trial judge, Honorable Jim Filosa, ordered death benefits to the spouse and the

---

2. The trial transcript provides in pertinent part at pp. 11–12:

"... Q. All right. Now, at the time that you married Mr. Bryan, did those children reside in your home?
A. Yes.
Q. Did he provide benefits for them?
A. Yes.
Q. Did he provide or put his paycheck in the bank to be used for the benefit of those children?
A. Yes...."

3. The protective order was entered in McCurtain County, Oklahoma and it provides in pertinent part:

"... **THE DEFENDANT IS ORDERED NOT TO THREATEN, ABUSE, ASSAULT, INJURE, MOLEST, HARASS, OR STALK THE PLAINTIFF. ...**"

4. The trial transcript provides in pertinent part at pp. 21–23:

"... Q.... Tell me what you told me your gross income was back in November 2001.
A. Twelve hundred.
Q. About twelve hundred, okay. In your deposition given February of this year—You remember giving that?
A. Yes.
Q. Okay. You testified that Mr.—
A. Oh, I'm sorry. You said November of 2001?
Q. Yes, ma'am.
A. Okay. I was drawing unemployment at that time....
Q. Okay. And how much a month was that?
A. I was getting a hundred and ninety-seven a week.
Q. And that was the full extent of your income?
A. Besides my child support.

Q. Okay. How much child support?
A. Twenty-one dollars a week. Twenty-one dollars and eighty cents a week.
Q. Okay. Per child?
A. No....
Q. Okay. And at that time, how much would Mr. Bryan give you?
A. Michael would give me as much as he could a week, anywhere from fifty to a hundred, or whatever he could afford.
Q. Okay. Did he give you money every week?
A. Just about.
Q. Okay.
Q. Okay.
A. Three to for times a week at least....
Q. Okay. He give you that by check or how did he do that?
A. He would give me cash ..."

5. The deposition provides in pertinent part at p. 7:

"... Q. Have you ever been married before, ma'am?
A. No...."
and at p. 12:
... Q. Okay. You and Michael never went to any other state to become married, did you, ma'am?
A. No.
Q. Okay. You never had any civil ceremony ever performed; is that correct?
A. No.
Q. Never—No, that's not correct?
A. Yes, you're correct...."

6. The child was born on September 27, 2000, and the birth certificate lists the employee as the child's father. The employee also signed an acknowledgment of paternity on November 7, 2001.

stepchildren and to the natural children, but denied benefits to the companion. The companion appealed on September 23, 2002, and on March 25, 2003, the Court of Civil Appeals, in an unpublished opinion, vacated a portion of the trial court's order and remanded the cause with instructions. It determined that the spouse and the stepchildren were not entitled to any death benefits. We granted certiorari on May 29, 2003.

¶8 **THE EVIDENCE SUPPORTS THE TRIAL COURT'S DETERMINATION THAT THE EMPLOYEE'S SURVIVING SPOUSE AND STEPCHILDREN ARE ENTITLED TO WORKERS' COMPENSATION DEATH BENEFITS, AND THE TRIAL COURT'S AWARD OF DEATH BENEFITS TO THE EMPLOYEE'S NATURAL CHILDREN SHOULD REMAIN UNDISTURBED.**

■ ¶9 We note at the outset that: 1) neither party disputes that the employee's natural child born prior to the employee's death is entitled to death benefits; and 2) although the spouse argues in her petition for certiorari that the trial court erred in awarding benefits to the natural child born after the employee died, the issue was not presented in the petition in error, the reply to the petition in error, in either parties' briefs on appeal, nor was it addressed by the Court of Civil Appeals. Non-jurisdictional issues, which are raised for the first time on rehearing or certiorari are generally unfit for review.[7] Consequently, the trial court's award of death benefits to the employee's natural children should remain undisturbed.

¶10 The companion argues that neither the spouse nor the stepchildren are entitled to workers' compensation death benefits because: 1) the spouse does not qualify as a surviving spouse pursuant to 85 O.S.2001 § 3.1 of the Workers' Compensation Act;[8] 2) the spouse did not receive one-half or more of her support from the employee; 3) the spouse's affirmative act of obtaining a protective order shows that the spousal relationship had ended; 4) once the spouse lost her status as a spouse, her children also lost their status as stepchildren; and 5) the stepchildren were not dependent on the employee for support.

¶11 The spouse counters that she meets the definition of surviving spouse under 85 O.S.2001 § 3.1,[9] and that she is not required to receive one-half or more of her support from the employee in order to recover death benefits. She asserts that: 1) obtaining a protective order did not alter the marital relationship, but rather was evidence of a justifiable cause for her and the employee to live apart; and 2) because she was the legal spouse of the employee and because she was dependent upon the employee for support, her children were also entitled to recover death benefits as well.

**7.** *Stidham v. Special Indemnity Fund*, 2000 OK 33, ¶15, n. 26, 10 P.3d 880. See in this connection, *Halliburton Oil Producing Co. v. Grothaus*, 1998 OK 110, ¶23, 981 P.2d 1244; *City of Oklahoma City v. State* ex. rel. *Oklahoma Dept. of Labor*, 1995 OK 107, ¶4, 918 P.2d 26; *First Federal Sav. and Loan Ass'n v. Nath*, 1992 OK 129, ¶10, 839 P.2d 1336. Consequently, we do not address the issue.

**8.** Title 85 O.S.2001 § 3.1, Definitions applicable to death benefits, provides in pertinent part:

"A. In respect to death benefits under the Workers' Compensation Act, the following definitions shall apply:
(1) 'Actually dependent' means:
a. a surviving spouse as defined in this section;
b. a child as defined in this section; or
c. any other person dependent in fact upon the employee and refers only to a person who receives one-half (½) or more of his support from the employee;
(2) 'Surviving spouse' means only the employee's spouse living with or actually dependent upon the employee at the time of his death or injury, or living apart for justifiable cause or by reason of desertion by the employee;
(3) 'Child' means a natural or adopted son or daughter of the employee under eighteen (18) years of age; ... The term 'child' includes a posthumous child, a child legally adopted or one for whom adoption proceedings are pending at the time of death, an actually dependent stepchild or an actually dependent acknowledged child born out of wedlock; ...
B. All questions of relationship and dependency shall be determined as of the time of injury for purposes of income benefits for injury, and as of the time of death for purposes of income benefits for death."

**9.** *Id.*

¶ 12 Title 85 O.S.2001 § 22 [10] of the Workers' Compensation Act provides the compensation amounts for death benefits for family members of an injured worker including the surviving spouse, a child or children, or other relatives such as parents, brothers, and grandparents, etc.—if actually dependent upon the employee.[11] Title 85 O.S.2001 § 3.1 [12] provides the definition of the dependents which are listed in § 22.

¶ 13 Under 85 O.S.2001 § 3.1 [13] a surviving spouse is defined as *either* "the employee's spouse living with or actually dependent upon the employee at the time of his death or injury, or living apart for justifiable cause or by reason of desertion by the employee." Stepchildren are included in § 3.1's definition of "child," if actually dependent.[14] Section 3.1 defines "actually dependent" as:

a. a surviving spouse as defined in this section;

b. a child as defined in this section; or

c. any other person dependent in fact upon the employee and refers only to a person who receives one-half (½) or more of his support from the employee

¶ 14 The companion relies on our decision in *Tatum v. Tatum*, 1982 OK 62, 736 P.2d 506 in support of her argument. In *Tatum*, the Court addressed the definitions provided in § 3.1, and their application to § 22. *Tatum* involved a dispute between two women who sought death benefits as the spouse of a deceased worker. One woman married the worker in 1958, and they lived together until he left the marital home in 1971. In 1972, without obtaining a divorce from the first woman, the worker cohabitated with another woman and her two children—and they held themselves out as husband and wife. Eventually, the couple had one child together.

¶ 15 After the worker was accidently killed on the job, the first woman sought death benefits for herself as a "deserted" spouse. The second woman sought death benefits for herself as the decedent's widow and for her children as the decedent's stepchildren. The *Tatum* Court held that the first woman was entitled to death benefits, and that neither the second woman or her children were entitled to any benefits because they did not fall within any statutorily cognizable class of authorized claimants.

¶ 16 In *Tatum*, the Court recognized that three categories of persons are statutorily "actually dependent," in the eligibility sense, to receive death benefits. The three categories are: 1) a surviving spouse; 2) a child or children; and 3) other persons who are in fact dependent upon the employee. However, because the compensation schedules in

---

10.  Title 85 O.S.2001 § 22, Schedule of compensation, provides in pertinent part:

   "The following schedule of compensation is hereby established:
   . . .
   8.  Income benefits for death.  If the injury or occupational disease causes death, income benefits shall be payable in the amount and for the benefit of the persons following, subject to the maximum limits specified hereafter:
   (a) Benefit amounts for particular classes of dependents.
   (1) If there is a surviving spouse, to such surviving spouse seventy percent (70%) of the average weekly wages the deceased was earning.  In no event shall this spousal income benefit be diminished.
   (2) If there is a child or children, to such child or children fifteen percent (15%) of the average weekly wages the deceased was earning for each child.  Where there are more than two such children, the income benefits payable for the benefit of all children shall be divided among all children, to share and share alike, subject to the provisions of subparagraphs (c) and (d) of this paragraph.

   (3) In addition to the benefits theretofore paid or due, two (2) years' indemnity benefit in one lump sum shall be payable to a surviving spouse upon remarriage.
   . . .
   (5) The income benefits payable for the benefit of any child under this section shall cease: . . .
   c.  When the actually dependent child ceases to be actually dependent, . . .
   9.  Where some pecuniary loss may be shown by heirs-at-law of the deceased, as defined by the descent and distribution statutes of Oklahoma, who are otherwise not entitled to receive benefits under other provisions of this section, such heirs-at-law shall receive compensation for their pecuniary loss not to exceed an aggregate of Five Thousand Dollars ($5,000.00)...."

11.  *Id.*

12.  Title 85 O.S.2001 § 3.1, see note 8, supra.

13.  *Id.*

14.  Title 85 O.S.2001 § 3.1, see note 8, supra.

§ 22 refer to dependents such as parents, brothers, sisters, grandparents and grandchildren, the Court determined that § 3.1 does not create a general class of authorized claimants for persons who are actually dependent on the decedent worker for support contributions, but do not fall into any of the three recognized categories. Nevertheless, the Court also recognized that, although no such evidence was present, a person's status as a deserted spouse might be lost if the spouse who was deserted took affirmative acts to end the relationship such as suing for divorce or separate maintenance, active resistance to reconciliation efforts or other acts which were indicative of a changed character in the spousal relationship or a legal change in the relationship.

■ ¶ 17 Implicit in the *Tatum* holding is a determination that the language in § 3.1 which requires a showing of dependent persons to have been receiving one-half of their support from the worker applies only to persons enumerated in § 22 such as parents, brothers, sisters, grandparents, etc; who allege that they were dependent on the employee for support, rather than surviving spouses and children. The spouse, who was legally married to the employee at the time of the employee's death, was only required to show that she met the statutory definition of a surviving spouse and that the stepchildren were dependent on the employee—she was not required to show that she or the stepchil-

dren received one-half or more of their support from the employee.[15]  However, pursuant to *Tatum*, the companion does not fall within any statutorily cognizable class of authorized claimants.

■ ¶ 18 When reviewing resolutions of fact on nonjurisdictional issues from the workers' compensation court, we do not reweigh the evidence, but instead look for any competent evidence to support the trial court's findings.[16]  It is only in the absence of competent evidence that the tribunal's decision may be viewed as legally erroneous and subject to appellate vacation.[17]  Here, the trial court's determination that the spouse and the stepchildren were entitled to death benefits was supported by the evidence.  It was undisputed that the spouse and the employee did not live together.  However, the spouse's testimony indicated that she and her children relied on the employee for support at the time of his death.[18]  The only evidence to the contrary was the companion's testimony that the employee did not provide any support to the spouse or the stepchildren.[19]  In addition to evidence of dependency, the record also reveals that the spouse secured a protective order which appears to have coincided with the employee's initiating a relationship with the companion[20] ——evidence that the spouse's separation from the employee would have been for a justifiable cause.[21]  Accordingly, we hold that the

---

**15.** See also, *Falcon Drilling Co. v. Thompson*, 1981 OK 108, ¶ 13, 634 P.2d 723 [Support test used to determine actual dependance on deceased workers' mother.].

**16.** *P.F.L. Life Ins. Co. v. Franklin*, 1998 OK 32, ¶ 26, 958 P.2d 156; *Lacy v. Schlumberger Well Service*, 1992 OK 54, ¶ 7, 839 P.2d 157; *Parks v. Norman Municipal Hospital*, 1984 OK 53, ¶¶ 12–13, 684 P.2d 548.

**17.** *P.F.L. Life Ins. Co. v. Franklin*, see note 16, supra; *Parks v. Norman Municipal Hospital*, see note 16, supra.

**18.** See trial transcript, notes 2 and 4, supra.

**19.** Johnson's deposition testimony provides in pertinent part at pp. 16–17:

"... Q. Okay. And what was your understanding of his relationship with Becky Bryan's children?
A. There was no relationship.

Q. When did—did he keep up with the children at all?
A. No....
Q. Okay. Had he given them any support?
A. No....
Q. (By Ms. Gan) Okay. Did he ever see the—Becky Bryan's children that you know of while he was living with you?
A. No, he did not ..."
Johnson also testified that she thought that Becky's children lived with their father.

**20.** Johnson's deposition provides in pertinent part at p. 5:

"... Q. And when did you first start having a relation with Michael Bryan?
A. September of '99...."

**21.** See, e.g., *Stack v. Sawmill*, 724 S.W.2d 735, 736 (Tenn.1987) [Separation because of poor economic circumstances and physical abuse was evidence of involuntary separation.]; *Meyer v.*

trial court did not err in its determination that the employee's surviving spouse and the stepchildren are entitled to workers' compensation death benefits.

## CONCLUSION

 ¶ 19 The death benefit provisions of the Workers' Compensation Act are given a broad and liberal construction in determining the question of dependency.[22] In order to recover death benefits as a surviving spouse, a person who was legally married to a worker at the time of the worker's death, is required only to show that he or she meets the statutory definition of a surviving spouse, rather than that he or she received one-half or more of their support from the employee. Similarly, although recovery for stepchildren is based upon dependency, a showing that the child received one-half or more of their support from the employee is likewise not required under the current statutory scheme. Findings of fact of the workers' compensation court on the issue of dependency under the death benefit provisions of the Act will not be disturbed on review if reasonably supported by any competent evidence.[23] The spouse's testimony indicated that she relied on the employee for support for her and the stepchildren at the time of the employee's death. The trial court neither erred in its determination that the employee's surviving spouse and the stepchildren are entitled to workers' compensation death benefits, nor in awarding death benefits to the employee's natural children.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, HARGRAVE, SUMMERS, WINCHESTER, JJ., concur.

BOUDREAU, J., dissents.

---

*A.B. McMahan Co.*, 269 Minn. 73, 130 N.W.2d 46 (1964) [Husband's drinking problem and failure to support family was evidence of involuntary separation.]; *Beta Construction Co.* v. *District of Columbia Department of Employment Services*, 748 A.2d 427, 432 (D.C.2000)[Evidence that spouse and decedent were living apart because decedent failed to provide support for the family combined with evidence of conjugal relationship supported finding of living apart for justifiable cause.]; *Rogers* v. *University Motor Inn*, 103 N.C.App. 456, 405 S.E.2d 770, 772 (1991) [Justifiable cause existed where wife left husband 12 years before death because of husband's alcoholism and abusive, violent and paranoid behavior.]; *Robinson Foundry, Inc.* v. *Moon*, 503 So.2d 863, 865 (Ala.Civ.App.1987) [Evidence of husband's serious drinking problem and physical abuse of his children supported finding of living apart for justifiable cause.]; *Utilities of Augusta, Inc.* v.

*Jackson*, 123 Ga.App. 78, 179 S.E.2d 563, 564 (1970) [No willful abandonment for spouse forced to leave because of heavy drinking and ill treatment.].

**22.** *Hopkins* v. *Gibson*, 1964 OK 213, ¶ 16, 395 P.2d 790; *City of Duncan* v. *Coulter*, 1964 OK 158, ¶ 0, 393 P.2d 863; *Boardman Co.* v. *Eddy*, 1961 OK 181, ¶ 0, 363 P.2d 821.

**23.** *Akin* v. *Akin Distributors, Inc.*, 1963 OK 247, ¶ 18, 386 P.2d 769; *Boardman Co.* v. *Eddy*, see note 22, supra; *Robberson Steel Co.* v. *State Indus. Court*, 1960 OK 163, ¶ 15, 354 P.2d 211. See also, *Matter of Swarer*, 1977 OK 53, ¶ 13, 566 P.2d 126 [Pecuniary loss is a question of fact and supported by competent evidence.]; *Sooner Const. Co.* v. *Brown*, 1975 OK 171, ¶ 21, 544 P.2d 500; *Meadow Gold Dairies* v. *Oliver*, 1975 OK 67, ¶ 25, 535 P.2d 290.