In the Matter of the Death of
Howard SWARER.

Keith BARNETT, Guardian, Claimant,

v.

GEORGE BEEBE ENTERPRISES, Respondent, Mid-Continent Casualty
Co., Insurance Carrier.

No. 49393.

Supreme Court of Oklahoma.

March 22, 1977.

Rehearing Denied July 20, 1977.

Gerard K. Donovan, Tulsa, for petitioner.

Whitten, McDaniel, Osmond, Goree & Davies by Edward E. Davies, Jr., Tulsa, for respondents.

BERRY, Justice:

Howard Don Swarer, employee of respondent George Beebe Enterprises, sustained accidental injury in course of employment October 3, 1973, and died as a result thereof on October 6, 1973. On July 17, 1974, Keith Barnett, Guardian ad litem of minor Ricky Swarer, filed claim in State Industrial Court to recover death benefits. Case was tried April 15, 1975, and respondent and insurance carrier admitted liability for death benefits, but objected claimant was not proper party to institute proceeding on behalf of minor child, and minor child did not sustain pecuniary loss because he was not child of decedent.

On December 15, 1975, trial court found and ordered decedent sustained accidental personal injury resulting in death as alleged and left no surviving spouse; however, decedent left three children: two married daughters who suffered no pecuniary loss and a minor son, Ricky Swarer, partially dependent on decedent and who suffered pecuniary loss. The trial court further found claimant, duly appointed guardian of Ricky Swarer, was proper party to file claim on behalf of minor child. Order was affirmed by State Industrial Court en banc. Respondent and Insurance Carrier appeal.

Respondent contends there is an "entire absence of proof" that Ricky Swarer is son of decedent. Respondent asserts that Mildred Joyce Ballard, mother of Ricky Swarer, and decedent were divorced more than two years prior to the child's birth and were not married at birth of Ricky Swarer or when birth certificate was filed and, therefore, trial court was in error finding that Ricky Swarer was heir-at-law of decedent. We disagree.

■ The policy of the law is to favor legitimation of children born out of wedlock, and by both statute and judicial construction the severity with which the law formerly dealt with such children has been tempered and softened. *In the Matter of the Estate of Allison LaSarge, deceased,* Okl., 526 P.2d 930; *In re Chew's Estate,* 200 Okl. 317, 193 P.2d 572. Specifically, 10 O.S. 1971 § 55, provides:

> "The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court."

Thus, requirements for legitimation of a child by alleged father is public acknowledgment, receiving the child into his family, with the consent of his wife, if married, and otherwise treating the child as if it were legitimate. Legitimation places the child on an equal footing with children regularly born in wedlock or adopted. See *Green v. Wilson,* 112 Okl. 228, 240 P. 1051; *Jameson v. Jameson,* 111 Okl. 82, 238 P. 426. Here, the alleged father, Howard Swarer, was not married. Therefore, it must be shown decedent publicly acknowledged Ricky Swarer as his son and received him into his family.

■ Although the record provides scant information about the relationship of decedent and child during child's early years, claimant introduced evidence child visited decedent on several occasions during the year preceding decedent's death. Moreover, decedent took the child fishing, to visit relatives and gave him money; others and child considered decedent his father. Further, claimant introduced an order terminating parental rights of decedent; still decedent and Ricky referred to one another as father and son. Therefore, there is no question decedent publicly acknowledged the child as his own.

But, did decedent receive the child into his family? In making this determination, we are guided by *In re Buffington's Estate,* 169 Okl. 487, 38 P.2d 22. We reported the facts in that case as follows:

"Lawrence at his birth was given the name of Lawrence Buffington, and in that name he enrolled in school, and was always known by that name. Until he was about 19 years of age he was, for the most part, in the custody of Texanna Bean, his maternal grandmother.

"There is no evidence tending to prove that after William Buffington married Fannie Davis August 25, 1909, he ever received Lawrence into his family with the consent of his wife. In fact it does not appear that Lawrence was ever in the home of William and Fannie more than one time and that only for a few minutes. But during the time William Buffington lived with his aunt, Amanda Foster, between the date of the death of his wife Maggie and his marriage to Fannie, that is, between May 25, and August 25, 1909, Lawrence was frequently brought to the home of William Buffington, and during this period William told a number of people that Lawrence was his son. He bought clothes, etc., for him, gave his grandmother, Texanna Bean, money towards his support, and frequently bought milk and food for him. Sometimes Lawrence would remain in the home of William and his aunt over night. After his marriage to Fannie, William continued to buy clothes, books, etc., for him, and otherwise contributed to his support, and frequently acknowledged him to others as his son. This he continued to do until Lawrence was about 19 years old, at which time Lawrence went to Texas, and on one occasion thereafter there is evidence to show that William Buffington sent Lawrence money through his grandmother to help pay his fare to Oklahoma.

■ If William Buffington ever received Lawrence into his family . . . it must have been during that period between May and August, 1909, when William was single and unmarried."

On these facts we held the putative father had a family within into which he could receive the child and was so received. In *Burton v. Noahobi,* 144 Okl. 49, 289 P. 335, we held it was sufficient that the alleged father married the child's mother and took the child to his father's home where the child remained not more than four or five days before being returned to a former residence, not with child's mother or alleged father, and remained ever since. Therefore, in the instant matter decedent sufficiently received child into his family and State Industrial Court was not in error in determining Ricky Swarer was minor son of decedent.

■ Respondent contends 84 O.S. 1971 § 215 applies and a witnessed writing is required. However, § 215 applies only to illegitimate children. Here, child assumed the status of an adopted child from the moment of birth and is for all purposes

legitimate from the time of birth upon 10 O.S. 1971 § 55 legitimation. See *In re Chew's Estate,* supra. Moreover, the principle of *In the Matter of Estate of John H. Benson, deceased,* Okl., 558 P.2d 384, distinguishable on its facts, does not apply. In *Benson* the decision turned on the fact there was no § 55 public acknowledgment and as a matter of law that a judicial determination of paternity in a bastardy action is not equivalent to § 215 writing. This Court held a not guilty plea in the bastardy action mitigated against § 55 acknowledgment, but intimated, citing *In the Matter of the Estate of Allison LaSarge, deceased,* supra, that a plea of guilty may be sufficient. Here there is no indication that decedent ever denied paternity; in fact, the evidence is that he overwhelmingly acknowledged paternity. Moreover, there is no indication he denied paternity in the judicial termination of parental rights.

Assuming equivalency between a bastardy proceeding and termination of parental rights on the question of parenthood, *Benson* is not controlling here because decedent did not contest paternity in the termination of parental rights matter.

Nor is *In the Matter of the Estate of Thomas W. Johnson, deceased,* 48 OBJ 463, which was decided on the basis plaintiff failed to sustain burden of proof controlling. The Court discussed three methods of legitimation: [1] subsequent marriage of parents (10 O.S. 1971 § 2); [2] adoption through public acknowledgment and acceptance (§ 55); [3] written acknowledgment (§ 215). The first and third categories are not in point here because no proof of either was offered by claimant. On the second method the Court simply held that acknowledgment of paternity to one individual, a domestic servant, was not sufficient to constitute a public recognition. Here there is considerable evidence of public recognition and it is not reasonably open to question that decedent was the natural father of Ricky.

Assuming arguendo Ricky Swarer is illegitimate, the United States Supreme Court has held denial of equal workmen's compensation recovery rights to the dependent unacknowledged illegitimate children violates the Equal Protection Clause of the Fourteenth Amendment, as the inferior classification of these dependent children bears no significant relationship to the recognized purposes of recovery that workmen's compensation statutes were designed to serve. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 786. However, it is unnecessary to decide the matter on this basis because we hold Ricky Swarer is legitimate for all purposes from the moment of birth pursuant to 10 O.S. 1971 § 55.

■■■■ But because parental rights of decedent were terminated, did minor son suffer pecuniary loss? Dependency is not a requirement for establishing right to death benefits; nor is amount of pecuniary loss significant. *Wallace v. State Industrial Court,* Okl., 406 P.2d 448. Moreover, there is a presumption a minor child suffers pecuniary loss as a result of death of parent. *Armour & Company v. Strickland,* Okl., 413 P.2d 320. There is evidence decedent contributed to his son's financial and moral welfare; any opportunity or expectation of future financial assistance from his father was foreclosed by decedent's passing. Moreover, there is no substantial difference in parent and child relationship in cases where child has been adopted by another and where parental rights are terminated. This Court has held a minor child could recover death benefits, although adopted by another prior to natural parent's death. *Meadow Gold Dairies v. Oliver,* Okl., 535 P.2d 290. Finally, whether minor son suffered pecuniary loss is a question of fact which, if supported by competent evidence, will not be disturbed on review. *National Zinc Co. v. Parker,* Okl., 442 P.2d 488. We conclude there is competent evidence to support trial court's finding.

■■■ Having determined basic requirements for death benefits have been established, we must decide whether claimant, guardian ad litem for minor son of decedent, is proper party to institute claim for death benefits.

We find respondent's contention that claimant was not proper party to institute claim on behalf of decedent's minor son not persuasive. 12 O.S. 1971 § 226, expressly requires an action by an infant be brought by his guardian or next friend. See *Davis v. Gustine Construction Company,* Okl., 445 P.2d 260. There is no question that claimant was properly appointed guardian ad litem for the purpose of filing claim. We hold claimant is proper party to institute instant claim on behalf of decedent's minor son.

Award sustained.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN and BARNES, JJ., concur.

SIMMS and DOOLIN, JJ., concur in result.

HODGES, C. J., dissents.