**In the Matter of the ADOPTION OF BABY BOY W., a Minor Child.**

No. 74613.

Supreme Court of Oklahoma.

May 5, 1992.

---

**51.** 51 O.S.Supp.1985 § 24A.17B. *See supra* note 37 for its pertinent terms.

James R. Gotwals & Assoc., Inc. by Therese Buthod and James R. Gotwals, Tulsa, for adoptive parents.

Elaine Meek, Tulsa, for biological mother.

Carol S. Nichols, Tulsa, for minor child.

Debbra J. Gottschalk, Tulsa, for biological father.

HODGES, Vice Chief Justice.

This is an appeal from the district court allowing the adoption of a baby without the unwed father's consent. We affirm the trial court. The parties to this appeal are the biological father (appellant) and the adoptive parents, the biological mother, and the minor child [1] (appellees).

## I. ISSUES

The first issue is whether a trial court must order a father to pay medical bills for the birth of a child, set child support, and order visitation before allowing the adoption of the child without the father's consent. The second issue is whether the Indian Child Welfare Act applies in the present case.

## II. FACTS

A transcript of the trial has not been included in the record. Without the transcript, it is impossible to review the facts which were presented at trial. The parties' statements of the facts differ considerably. The following is a statement of the facts as taken from the briefs. The record does not reflect which version of the facts is accurate.

The parties do not dispute that the biological mother and appellant met in 1988 and began dating. She was fourteen years old, and he was seventeen years old. The mother became pregnant sometime between August and October of 1988. At about her sixth month of pregnancy, the mother's parents discovered that she was pregnant. Appellant alleges that at the time of the discovery of the pregnancy that contact with him was cut off. Appellees allege that the mother's parents not only did not cut off contact, but actually attempted to get the appellant to meet with them to discuss the pregnancy, his relationship with their daughter, and his responsibility for the cost of the birth of the child. They allege that the appellant refused.

Baby Boy W. was born on June 16, 1989. The appellant makes much of the fact that the biological mother entered the hospital under an assumed name and was assigned to a room without a telephone. He states that she called him two days after the baby was born and told him of the birth. He argues that he could not pay any of the medical bills because the information was confidential. However, he does not allege that he tried to pay the hospital and the hospital refused to allow him to do so. The appellees counter that the appellant knew the name under which the mother entered the hospital, knew the hospital in which she delivered, and made no attempt to help with the costs.

The appellant asserts that he paid $250.00 toward the medical bills. The appellees reply that, although he had a job, the appellant did not make any payments on the medical bills until the last day of the trial. Because those payments were made to either the mother or her parents, appellees imply that he could have paid the mother directly for the bills at any time.

The day after birth, the baby was placed with the adoptive parents. On June 21, 1989, the appellant filed a petition to establish paternity. At that hearing, appellant learned of the adoption proceedings. The

1. The trial court appointed an attorney for the minor child.

paternity action was transferred to the judge presiding over the adoption proceedings.

On October 5, 1989, the trial court entered a decree establishing that the appellant was the baby's father. In that same decree, the trial court found that the Indian Child Welfare Act did not apply because the baby had never been in appellant's custody. The court also consolidated the paternity action with the adoption proceedings. After a trial on the remaining issues, the trial court terminated the parental rights of the appellant and found that the adoption should proceed without the appellant's consent.

### III. DISCUSSION

The appellant argues two errors in his brief on appeal. First, he argues that the trial court erred when it allowed the adoption to proceed without his consent effectively terminating his parental rights without ever giving him the opportunity to show he was a fit parent. He argues that the trial court should have ordered him to pay medical bills, set child support and visitation, whereby giving him a chance to prove his parental fitness. Second, he argues that the Indian Child Welfare Act applies to this case.

### A. TERMINATION OF PARENTAL RIGHTS

There are three statutes under which parental rights can be terminated. Section 29.1 of title 10 of the Oklahoma Statutes applies when the mother of a child born out of wedlock relinquishes her rights to the child. There is no evidence in the record and the parties do not argue that section 29.1 is applicable in the present case.[2] In fact, appellant concedes that section 29.1 is not applicable. Section 1130(A)(4) of the title 10 provides for the termination of parental rights when a noncustodial parent fails to contribute to the support of a child under a court order or, in the absence of a court order, fails to provide for the child

consistent with his ability. Appellant also concedes that section 1130 does not apply.

Section 60.6 of title 10 provides for adoption without the consent of the parent which effectively terminates that parent's rights. Section 60.6 is the applicable statute because the adoptive parents are seeking to allow the adoption without the appellant's consent. It provides that a child under eighteen (18) years cannot be adopted without the consent of its parents except under some circumstances. Section 60.6(3) provides an exception to the general consent rule. Section 60.6 provides:

[C]onsent is not required from:

.　　.　　.　　.　　.

(3) The father or putative father of a child born out of wedlock if:

a. prior to the hearing provided for in Section 29.1 of this title, and having actual knowledge of the birth or impending birth of the child believed to be his child, he fails to acknowledge paternity of the child or to take any action to legally establish his claim to paternity of the child or to exercise parental rights or duties over the child, including failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy, *or*

b. at the hearing provided for in Section 29.1 of this title:

.　　.　　.　　.　　.

(2) having established paternity, he fails to prove that he has exercised parental rights and duties toward the child unless he proves that prior to the receipt of notice he had been specifically denied knowledge of the child or denied the opportunity to exercise parental rights and duties toward the child. As used in this subparagraph, specific denial of knowledge of the child or denial of the opportunity to exercise parental rights and duties toward the child shall not include those instances where the father or putative father fails to prove to the satisfaction

---

**2.** The mother relinquished her rights to the child on November 20, 1989, after the judge

issued his ruling in this case.

of the court that he made a sufficient attempt to discover if he had fathered the child or to exercise parental rights and duties toward the child prior to the receipt of notice. . . .

(Emphasis added.)

Both subsections 60.6(3)(a) and 60.6(3)(b) provide that a child can be adopted without the father's consent if the father fails to establish that he has exercised "parental rights and duties toward the child." This exercise of duties includes contributing to the support of the mother during the pregnancy and contributing to the support of the child after its birth. The burden of proof is on the father and applies *even if* paternity has been established. *See Id.* at § 60.6(3)(b)(2).

In addition to the statutory requirements, this Court has also required that the adoption and termination of parental rights be in the best interest of the child. *See DeGolyer v. Chesney*, 527 P.2d 844 (Okl. 1974). Both the determination that the adoption of the baby are in the best interest of the child and that the appellant did not exercise his parental rights and duties toward the child, including support of the mother during the pregnancy, are questions of fact, not questions of law.

■■■■ "Absent a record showing otherwise, this court *presumes that the trial court did not err.* Whenever [the] appellate record does not include any evidence, a presumption arises that the judgment was responsive to the proof adduced." *Hamid v. Sew Original*, 645 P.2d 496, 497 (Okl. 1982). The entire trial transcript has not been made a part of the appellate record in this case. The only part of the transcript tendered is the judge's pronouncement from the bench of his ruling. Therefore, it must be assumed that the facts underlying the trial court's judgment were proven. There is nothing in the record to show that the trial court ruled incorrectly. Therefore, the judgment must be affirmed. *See id.*

■■■■ The appellant attempts to construe the issue as a question of law, eliminating the need for the trial transcript on review. Without citing authority, he argues that the trial court should have ordered him to pay child support and set visitation as part of the paternity decree and then allow him to show that he would follow the court order. This is simply not a requirement under the statutes. Sections 60.6(3) of title 10 provides for the adoption of a child without the father's consent when the father fails to provide support even in the absence of a court order. It should be noted that this construction is consistent with section 1130(4) of title 10 which provides for the termination of a parent's rights when that parent fails to contribute to the support of the child *even in the absence of a court order.*

The trial court did not err in allowing the adoption without the appellant's consent without first ordering him to assume his duties as a parent. Further, without the trial transcript, it is impossible on appeal to determine if the trial court improperly found that the statutory requirements of section 60.6 were met. Because that issue is a question of fact, this Court must presume that the trial court's judgment was consistent with the facts proven. We cannot say that the trial court erred in terminating the appellant's parental rights and allowing the adoption to proceed without his consent.

## B. INDIAN CHILD WELFARE ACT

■■ The appellant's second proposition is that the Indian Child Welfare Act, 25 U.S.C. §§ 1901–63 (1988) (ICWA), and the Oklahoma Indian Child Welfare Act, Okla. Stat. tit. 10, § 40–40.9 (Supp.1982) (OICWA), apply in this case. Because the record is void of evidence that the appellant, the baby's mother, or the baby is a member of an Indian tribe, we cannot say that the trial court erred in ruling that those statutes were inapplicable.

The ICWA in section 1903(4) and the OICWA in section 40.2 define an "Indian child" as an unmarried person under eighteen years old who is either "(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian

tribe." (Emphasis added.) The ICWA and the OICWA only apply when a child involved in a custody proceeding is an "Indian child." *See* 25 U.S.C. § 1911; Okla.Stat. tit. 10, § 40.3.

There is no evidence in the record, and the appellant does not argue, that either he, the mother, or the child is a member of an Indian tribe. The only argument that the appellant makes is that he presented evidence that his school records show him to be an Indian. However, he fails to include any evidence in the record on appeal to support that position.

In *In re J.B.*, 643 P.2d 306 (Okl.1982), on appeal the mother argued that the ICWA applied to the case. This Court found that, from the record before it, "it cannot be demonstrated that [the mother] comes within the provision of 25 U.S.C. § 1901, et seq., thus the [mother] has failed to demonstrate the trial court erred in refusing to apply the provisions of 25 U.S.C. 1912(e)." *Id.* at 308. This Court also found that the record before the court did not establish the mother's "status as an Indian sufficient to bring her within the ambit of those statutes. Under such circumstances, this Court will not and cannot determine the trial court erred." *Id.*

As in *In re J.B.*, the record before this Court does not establish the appellant's status as an Indian sufficient to bring this case within the purview of the ICWA or the OICWA. Therefore, this Court cannot determine that the trial court erred.

## V. CONCLUSION

In the absence of a trial transcript, we must presume that the trial court's judgment was responsive to the evidence and that the trial court did not err in terminating the appellant's parental rights and allowing the adoption to proceed without his consent. Further ICWA and the OICWA do not apply in this case.

AFFIRMED.

LAVENDER, SIMMS and HARGRAVE, JJ., concur.

CHARLES A. JOHNSON, S.J., concurs specially.

ALMA WILSON, J., concurs in result and dissents in part.

OPALA, C.J., and KAUGER and SUMMERS, JJ., concur in part and dissent in part.

CHARLES A. JOHNSON, S.J., sitting by designation to fill the vacancy created by the retirement of DOOLIN, J., effective May 1, 1992.

CHARLES A. JOHNSON, S.J., specially concurring.

I find that the majority is correct in affirming the holding of the District Court's opinion by the Honorable David E. Winslow. It should be pointed out that an appellate court can only review the record that is before it. It is the obligation of counsel to see that a proper complete record is presented. The law is clear that "absent records" showing otherwise, this Court presumes that the trial court did not err. *Hamid v. Sew Original*, 645 P.2d 496, 497 (Okl.1982).

The reason for this special concurrence is to admonish members of not only the bench but the bar that an appellate court can only review the record before it. This Court must presume that the trial court did not abuse its discretion. *Broadwater v. Courtney*, 809 P.2d 1310 (Okl.1991). While I agree that there are procedural problems in this case as it relates to 10 O.S.1981, § 29.1 and § 60.6, this Court can only review what is presented to it. No abuse of discretion has been shown; therefore, the trial judge's findings and order must be upheld.

SUMMERS, Justice, concurring in part, dissenting in part with whom OPALA, C.J., and KAUGER, J. join.

I believe Sections 29.1 and 60.6 must be applied together to adopt without consent and terminate parental rights in cases such as this. Absence of the requirement for consent must first be shown under the latter statute before the former may then be used to sever parental rights. The father, having been afforded no opportunity to exercise parental rights, should not have

been held accountable for his failure to exercise them. 10 O.S.1981 § 60.6 3.b.2.

KAUGER, Justice, with whom OPALA, C.J. joins, concurring in part and dissenting in part.

The result reached by the majority may arguably be in the best interest of the child, but it is not the law.[1] I agree that in the absence of a trial transcript, we must presume that the trial court's judgment was responsive to the evidence.[2] However, the Decree Establishing Paternity provides in pertinent part:

"... 1. The court is satisfied that the requirements of the Uniform Child Custody Jurisdiction Act have been met, that the Indian Child Welfare Act does not apply since the Baby Boy W. has never been in the custody of his Indian father, and that this Court has jurisdiction over both the parties and the subject matter of this litigation...."[3]

Although the majority cites appropriate authorities, it does not apply the facts of the case to the controlling law. The trial court in the paternity decree makes the specific finding that the father of Baby Boy W. was an Indian, and it held, contra to *Mississippi Band v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29, 46 (1989), that the Indian Child Welfare Act (ICWA) was satisfied because the child had never been in the father's custody.

In *Holyfield,* the United States Supreme Court held that a child's domicile is determined by the parents' domicile—the child's domicile may be a place where the child has never been. The *Holyfield* Court noted that traditionally the domicile of a child born out of wedlock is the mother's domicile. However, this Court held in the *Matter of Swarer,* 566 P.2d 126–27 (Okl.1977),

that parenthood is acknowledged if from the time of birth the father publicly acknowledges the child as his own and treats the child as his child. The father in this case acknowledged the baby by the filing of the paternity action. Under the teaching *In re Estate of LaSarge,* 526 P.2d 930, 933 (Okl.1974), the admission of paternity in a filed court document is sufficient to constitute public acknowledgment of a child born out of wedlock. The father's filing of the paternity action with the court clerk created a public record of the father's acknowledgement of his child.

The *Holyfield* Court held that Congress' concern over the placement of Indian children in non-Indian homes extended to cases where the child had never been a part of an Indian family. The Court found that Congressional concerns extend beyond the wishes of individual parents. Rather, the interest protected is that of Indian tribes, and of Indian children. The interests of the tribe and the child were not met by the trial court's determination that the ICWA did not apply because the child had never been in his father's custody. The majority approves the trial court's failure to heed the mandate of the Indian Child Welfare Act. No determination of the child's status was sought from either the tribe or the BIA, nor was the tribe notified of the impending adoption proceedings. The record supports the father's allegations that the baby is an Indian child subject to the ICWA.[4] This finding cannot be ignored.

Even if the ICWA and *Holyfield* are inapplicable, the majority has also ignored the Oklahoma statute, 10 O.S.1991 § 60.6,[5] as well as the controlling precedent of *Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614, 626 (1983), *Caban v. Mohammed,* 441 U.S. 380, 392, 99 S.Ct. 1760, 1768, 60 L.Ed.2d 297, 307 (1979),

**1.** In re *Interest of C.W.,* 239 Neb. 817, 479 N.W.2d 105, 114 (1992).

**2.** *Hamid v. Sew Original,* 645 P.2d 496–97 (Okl. 1982).

**3.** Record at p. 78.

**4.** Title 10 O.S.1991 § 40.2(2) provides:
"2. 'Indian child' means any unmarried or unemancipated person who is under the age of eighteen (18) and is either:

a. a member of an Indian tribe, or
b. is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe;"

**5.** Title 60 O.S.1991 § 60.6 refutes the majority's finding that the statute terminates the unwed father's parental rights because the father failed to exercise parental rights toward the child. The statute provides in pertinent part:
"A child under eighteen (18) years of age cannot be adopted without the consent of its

and *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 555, 54 L.Ed.2d 511, 520 (1978). In those cases, the United States Supreme Court held that if an unwed father demonstrates a commitment to the responsibilities of parenthood, his parental rights require substantial protection under the Due Process Clause. The majority condones the discriminating treatment of parents of children born out of wedlock. It ignores extant law and tolerates substandard procedures for termination of the unwed father's parental rights thus violating the equal protection clause of the United States Constitution and of the Okla. Const. art 5, § 59.[6]

parents, if living, except that consent is not required from:

.   .   .   .   .

3. The father or putative father of a child born out of wedlock if:

a. prior to the hearing provided for in Section 29.1 of this title, and having actual knowledge of the birth or impending birth of the child believed to be his child, he fails to acknowledge paternity of the child or to take any action to legally establish his claim to paternity of the child or to exercise parental rights or duties over the child, including failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy, or ..."

Here, the father filed for paternity five days after his baby's birth. The father has not been afforded an opportunity to exercise his parental rights, and he should not be held accountable for his failure to exercise them.

6. United States Const., amend. XIV, § 1 provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Okla. Const., art. 5, § 59 provides:

"Laws of a general nature shall have a uniform operation throughout the State, and were a general law can be made applicable, no special law shall be enacted."

*In re Adoption of Baby Boy D,* 742 P.2d 1059, 1071 (Okl.1985) (Kauger, J., dissenting opinion).