OSCN Found Document:IN THE MATTER OF THE ADOPTION OF L.B.L.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF THE ADOPTION OF L.B.L.
2023 OK 48
529 P.3d 175
Case Number: 119316
Decided: 04/25/2023
As Corrected: May 3, 2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 48, 529 P.3d 175

 
 

IN THE MATTER OF THE ADOPTION OF: L.B.L., A Minor Child

SARA POLLARD, Respondent/Appellant,
v.
GRANT LLOYD and KALAN LLOYD, Petitioners/Appellees.

¶0 Petitioners Lloyds sought to adopt minor child L.B.L. without Mother Sara Pollard's consent. The District Court of Cherokee County, Judge Josh King, found that Child was eligible for adoption without Mother's consent. Mother appealed, and the Court of Civil Appeals, Division 1, reversed the trial court. The LLoyds petitioned for writ of certiorari from this decision. We granted the petition for writ of certiorari, vacate the Court of Civil Appeals opinion, and affirm the trial court.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED;
CASE REMANDED TO TRIAL COURT 

Kathleen M. Egan, Aaron D. Bundy, Law Office of Aaron D. Bundy, PLC., Tulsa, Oklahoma, for Respondent/Appellant

Brad K. Cunningham, Conner & Winters, LLP, Tulsa, Oklahoma, Natalie S. Sears, Hall Estill Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, and Jacob W. Aycock, Robinett, Swartz & Aycock, Tulsa, Oklahoma, for Petitioners/Appellees

Denise Deason-Toyne, Tahlequah, Oklahoma, For Minor Child

KUEHN, J.:

¶1 This case of adoption without parental consent illustrates the tension between two competing principles: parental rights and the care necessary to provide due process before terminating those rights without consent versus the "best interests of the child" standard emphasized in the Adoption Code. Ideally, the child's best interests run together with the parent's. In practice these principles seldom conflict, because a trial court may usually give equal effect to both. Sometimes, this can only be done by ensuring the parent's due process rights are protected, then considering which outcome is in the child's best interests. Here, the Court of Civil Appeals specifically acknowledged the best interests of the child standard, but allowed it to be outweighed by other considerations in reaching its conclusion. Consequently, we vacate the Court of Civil Appeals opinion, affirm the trial court, and remand the case to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY

¶2 Minor Child L.B.L was born to Respondent Pollard (Mother) in May 2017. Child was born addicted to methamphetamine and PCP. The next two and a half years of Child's life were tumultuous. As an infant he stayed with Mother in a rehabilitation facility. In 2018, Father was convicted of assault and battery in the presence of a minor child. During the summer of 2019, the Department of Human Services investigated whether and under what circumstances Child might safely remain with either or both parents. On August 4, 2019, while staying with Father, Child was found in the afternoon wandering alone in a parking lot, wearing only a diaper. Child was returned to Father. Around the same time Mother tested positive for drugs. Child was put in Father's custody under a safety plan which prohibited visitation by Mother, but Father nevertheless allowed her to have contact with Child. In late August, DHS removed Child from Father's custody and briefly placed him with a third party. Child was last in Mother's care on August 28, 2019.

¶3 On September 19, 2019, Petitioners, the Lloyds (Guardians), Child's paternal uncle and aunt, were appointed Child's emergency guardians. They were granted full guardianship on December 3, 2019. In connection with this, the trial court issued guardianship standards imposing requirements on Mother and Father before the guardianship could be terminated. These included clean drug tests, attendance in long-term counseling, and assessment and compliance with recommendations for domestic violence and mental health issues.[1] The guardianship court held child support in abeyance pending review. When the temporary guardianship began, Guardians started Child on therapy as well as educational and medical intervention, to address his cognitive problems and developmental delays.

¶4 Early in the guardianship, in September 2019, Mother had a Facetime visit with Child. This had an adverse effect on Child, who began to self-harm after the call. Mother subsequently asked Guardians for visitation, including Facetime visitation, ten or fifteen times. However, after the self-harm caused by the first visit, Child's therapist recommended Mother and Child have no further contact, and Guardians refused her requests for visitation. 

Mother did not participate in the guardianship proceedings. She neither appeared at hearings nor filed any responses. Nor did Mother submit the required proof that she had complied or attempted to comply with the conduct requirements imposed by the guardianship standards.[2] A report filed by the Guardian ad Litem on November 27, 2019, notes that during conversations Mother never asked about Child. Because Mother was not involved in the guardianship, the interim orders and visitation arrangements only mention Father.

During this time, Mother was not idle. She worked on her own issues, and she made some efforts to remain in Child's life. Mother entered inpatient rehabilitation on September 27, 2019, after the temporary guardianship began. She was discharged on November 18, 2019, but relapsed in December 2019 and again in January 2020. While she was in rehab, Mother did not have a job and could not financially contribute to Child's care. Mother found a job in late February 2020. After meeting her regular monthly expenses, she was able to make two support payments, in May and August 2020, totaling $130.00.[3] Although Mother did not give Child any Christmas presents, she sent Child a package with several birthday presents in May 2020. However, overall, Mother herself admitted that between July 2019 and September 2020, there was no month in which she maintained a substantial and positive relationship with Child.

¶5 Six months into the guardianship proceedings, in June 2020, Mother filed a petition for visitation. Guardians objected, noting Mother had not previously requested visitation, had failed to provide a clean drug test, had not complied with the guardianship standards, and had not contacted Child's therapist regarding visitation. Child had not seen Mother since September 2019. Mother's petition was denied in August 2020. After Guardians' objection was filed in June 2020, Mother found out who Child's counselor was, contacted the counselor, and scheduled an appointment for herself in accordance with the guardianship standards; Mother admitted that she knew the guardianship standards had been issued in fall 2019.

¶6 On September 21, 2020, Guardians filed a petition to adopt Child without Mother's consent. In the petition, they alleged Mother had willfully failed to contribute to Child's support or establish and/or maintain a substantial and positive relationship with Child for twelve consecutive months out of the fourteen months preceding the filing of the petition for adoption. On September 28, 2020, Mother began filing reports in the guardianship case on the progress she'd made with the court-ordered guardianship standards.

Trial Court's Findings of Fact and Conclusions of Law

¶7 The trial court granted the request for adoption without Mother's consent. The trial court's Findings of Fact included: (a) the relevant time period for the adoption proceedings was from July 21, 2019, through September 20, 2020; (b) Child was last in Mother's care on August 28, 2019, and Mother's duty to support Child began on that date; (c) the guardianship court held child support in abeyance but did not relieve Mother of the duty to support Child; (d) Mother paid no child support from September 2019 through April 2020, or June and July 2020, and although any child support order had been stayed she paid $130 in child support in May and August 2020; (e) mother had the ability to pay during that time; (f) Mother relapsed with drugs and alcohol in December 2019 and January 2020; (g) Mother had been employed from February 29, 2020 through the date of the hearing; (h) Mother testified that she failed to maintain a substantial and positive relationship with Child, had not seen Child since a FaceTime visit in September 2019, and had not exercised any parental rights or responsibilities since August 28, 2019; (i) Child engaged in self-harm following the September Facetime call and Child's therapist recommended visitation should cease; (j) Mother asked for more Facetime visits but was told of the therapist's recommendation; (k) Mother did not appear or participate in guardianship proceedings until June 2020; (l) Mother received all the guardianship standards and court orders; (m) after informally attempting to get visitation with Child, Mother filed a formal request for visitation; (l) Mother testified that Guardians followed the therapist and guardian ad litem recommendations regarding visitation; (m) Mother admitted she chose not to take further steps to maintain a substantial and positive relationship with Child.

¶8 Applying these facts to the statutory requirements for adoption without parental consent, the trial court concluded that: (a) it had jurisdiction, venue was proper, the federal and state Indian Child Welfare Acts did not apply; (b) the law presumes consent of a parent is necessary for adoption, with exceptions including Title 10, Sections 7505-4.2(B) and 7505-4.2(H); (c) these statutes must be strictly construed, and the party seeking adoption without consent must prove it is warranted by clear and convincing evidence; (d) in defense of a claim of failure to maintain a substantial and positive relationship with Child, the parent must prove to the court's satisfaction that she took sufficient legal action to support such a relationship, but was denied the opportunity due to the custodian's actions; (e) Guardians had met their burden to show Mother willfully failed to support Child and failed to establish and/or maintain a substantial and positive relationship with Child, within twelve consecutive months during the relevant time period; and thus (f) Child was eligible for adoption without Mother's consent.

BEST INTERESTS OF THE CHILD

¶9 The Legislature's overriding principle in adoption cases is the best interests of the child. The first sentence of the Adoption Code makes it clear: "The Legislature of this state believes that every child should be raised in a secure, loving home and finds that adoption is the best way to provide a permanent family for a child whose biological parents are not able or willing to provide for the child's care or whose parents believe the child's best interest will be best served through adoption." 10 O.S. § 7501-1.2(A) (emphasis added). And the statute's purpose -- the primary consideration in any adoption proceeding -- is to "ensure and promote the best interests of the child. . . ." 10 O.S. § 7501-1.2(A)(1). In this vein, when the Legislature described the purpose of the revised Children and Juvenile Code, it began by establishing a presumption that the best interests of a child are ordinarily served by leaving the child in its parents' custody. 10A O.S. § 1-1-102(A)(1) (emphasis added). And the Legislature explicitly affirmed the policy importance of the child's best interests: "[W]here family circumstances threaten the safety of a child, the state's interest in the welfare of the child takes precedence over the natural right and authority of the parent to the extent that it is necessary to protect the child and assure that the best interests of the child are met." 10A O.S. § 1-1-102(A)(3) (emphasis added).

¶10 This Court has also clearly articulated the importance of the best interests of the child in adoption proceedings. "The primary issue in adoption is whether the adoption will promote the best interests of the child." C.D.M., 2001 OK 103, ¶ 23, 39 P.3d at 811. COCA relied on In the Matter of Adoption of M.A.S., 2018 OK 1, 419 P.3d 204, to justify its emphasis on the requirements of Section 7505-4.2 as opposed to the best interests of the child. M.A.S. notes that the statute requires a reviewing court to construe the statute strictly in a parent's favor, given the importance of parental rights and the fact that the party seeking to terminate those rights has the burden of proof. M.A.S., ¶ 11, 419 P.3d at 208. However, after discussing the statutory requirements, M.A.S. states: "The best interests of the child serve as the polestar in all adoption proceedings." Id. ¶ 30, 419 P.3d at 214 (quoting In re Adoption of M.J.S., 2007 OK 44, ¶ 30, 162 P.3d 211, 222).

¶11 A court must construe the statute strictly in a parent's favor because every biological parent has a fundamental liberty interest in the care, custody and management of their child, even if that relationship is strained or worse. Santosky v. Kramer, 455 U.S. 745, 753-54 (1982). A parent's rights must be strenuously protected, by providing the parent with fundamentally fair procedures before that familial bond, however weakened, may be destroyed by the State. Id. Oklahoma has protected this fundamental liberty interest by enacting the strict due process requirements of Title 10, Section 7505-4.2. That's not at issue here; Mother was afforded those protections.

¶12 Usually, protecting a parent's due process rights, as defined by statute, will be in a child's best interests. That is not always the case. Occasionally, as here, a trial court terminates parental rights, after considering the factors set forth in Section 7505-4.2, based on evidence that though a parent tries to maintain a relationship, the child is actually harmed by contact with the parent. Despite the parent's fundamental interest in her parental relationship with her child, neither a trial court nor a reviewing court may disregard this evidence. The trial court found that Guardians denied Mother access because they were told by Child's counselor that seeing Mother caused Child to harm himself, and because they saw Child harm himself after the visit with Mother. Implicit in this finding is a determination that Child's best interests were not served by visitation -- because it is not in a child's best interest to require it to undergo an experience that results in harm to the child. And the trial court found the statutory basis making Child eligible for adoption without Mother's consent was Mother's failure to support Child and failure to establish and/or maintain a substantial and positive relationship with child under Sections 7505-4.2(B)(2) and 7505-4.2(H)(1). Because the purpose of the Adoption Code is to ensure and promote the best interests of the child under Section 7501-1.2(A), when the trial court made those findings, it inherently found that adoption without consent was in Child's best interests.

¶13 COCA agreed that Guardians and Child's therapist were acting in Child's best interests, stating, "There is not one sliver of evidence in this case that Foster Parents acted as they did for any reason other than for the benefit of the child." COCA thus explicitly acknowledged the "best interests of the child" standard. However, COCA found that fulfillment of the statutory factors overrode the best interests of the child -- that the simple fact of Guardians' refusal of visitation, without considering the reason, absolved Mother of her responsibility to establish and/or maintain a substantial and positive relationship with Child. This misapplication of the law disregards both the full language of the statute and the expressed intent of the Legislature.

Adoption Without Mother's Consent is in Child's Best Interests

¶14 When determining which outcome is in a child's best interests, we may look at the evidence considered by the trial court which supports adoption, including the child's bond and relationship with the guardians seeking adoption. C.D.M., 2001 OK 103, ¶ 24, 39 P.3d at 811. Clear and convincing evidence supports the trial court's conclusion that adoption without Mother's consent is in the best interests of Child. The record supports the trial court's findings of fact that, since being placed with Guardians, Child has received educational and medical care to address his cognitive and developmental delays. In that time, Child has begun to meet developmental milestones. Child's therapist reported to the trial court that, in that stable environment, Child had bonded with Guardians and was thriving.

¶15 The record supports the trial court's findings that since the guardianship, Mother effectively failed to establish or maintain a relationship with Child until June 2020, when she asked for a hearing to determine visitation. The trial court found that, by her own admission, Mother could have sent Child cards, letters, or toys, but, other than the birthday package, did not. She never contacted Guardians to ask if Child needed anything. Although Mother knew she needed to contact Child's therapist before the guardianship could end, she made no attempt to do so until Guardians objected to her formal request for visitation. Evidence supported the trial court's finding that Child harmed himself after his only Facetime visit with Mother; Child pulled his hair out, hit and slapped himself, scratched his face, and hit his head on a wall. Child was still a toddler. In the two and a half years between Child's birth and the guardianship, Mother shared custody with Father and had him as an infant with her during one stay in a rehabilitation facility. After that stay and before the guardianship, as a result of Mother's continued substance abuse, DHS ordered that Child have no contact with Mother.

¶16 Neither the trial court nor this Court are asked to determine whether Mother loves Child or would like to be able to care for him. We do not make light of the difficulty of Mother's circumstances. But the record shows that Mother's life of substance abuse, poverty, and domestic violence took a toll not only on her, but on Child. The record shows that, by the time of the hearing on the adoption petition, Mother had made efforts to comply with the guardianship standards. But the trial court was in the best position to weigh all the evidence, including Mother's testimony and her admissions.

STATUTORY REQUIREMENTS FOR ADOPTION WITHOUT CONSENT

¶17 The State recognizes that, for some children, adoption is the best way to provide a secure and loving home. 10 O.S. § 7501-1.2(A). Under very narrow circumstances, set forth explicitly in statute, the State permits adoption without a parent's consent. Two exceptions to the consent requirement are at issue here. Section 7505-4.2(B) provides:

Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor. . . . According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order.

10 O.S. § 7505-4.2(B).

¶18 Section 7505-4.2(H)(1) provides:

Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

10 O.S. 7505-4.2(H)(1).

Willful Failure to Support Child

¶19 There is no dispute that Mother failed to support Child for twelve consecutive months within the fourteen months before the adoption petition was filed.[4] The question here is whether Mother's failure to support was willful. This is determined by the particular facts of the case. M.A.S., 2018 OK 1, ¶ 16, 419 P.3d at 211. The trial court framed this as whether Mother's duty to support under Section 7505-4.2(B) was affected by the guardianship court's order holding child support in abeyance until review. The court found that although the order did not specify an amount, the duty itself was not affected. COCA's opinion does not appear to address this finding, but instead, delves into the minutiae of Mother's finances during that period in an attempt to determine whether she could have paid more than she did. Ability to pay is relevant to determine whether a parent's actions are willful. Id. ¶ 20, 419 P.3d at 212. COCA reasoned that if Mother could have paid more, but did not, her actions would be willful.

¶20 However, neither the trial court nor COCA recognized the practical effect of the guardianship court's order holding child support in abeyance. That order remained in effect for ten consecutive months out of the fourteen-month time period. Whether or not Mother had a duty to provide support, and whether or not she could, it was not unreasonable of her to act as if that order relieved her of the immediate duty to pay child support. Mother testified that she was confused because her attorney told her to make what payments she could, but the court had not ordered it. The court order indicated that Mother did not need to make support payments until an undetermined future date. Mother complied with that order. We will not find that compliance with a court order which entirely, if temporarily, relieves Mother of her duty to pay renders Mother's failure to support willful. G.D.J., 2011 OK 77, ¶ 22, 261 P.3d at 1165.

Substantial and Positive Relationship with Child

¶21 Mother admitted that she did not establish and/or maintain a substantial and positive relationship with Child during the relevant time period. She argued that this wasn't her fault, because Guardians refused her requests for visitation after her first Facetime visit caused Child to injure himself. Under Section 7505-4.2(H)(2), Mother may claim that Guardians, as Child's custodians, denied her the opportunity to establish and/or maintain a relationship with Child; Mother must prove to the court's satisfaction that she took sufficient legal action to establish and/or maintain a substantial and positive relationship with Child before receiving notice of the hearing on the petition for adoption without consent. 75 O.S. § 7505-4.2(H)(2).

¶22 COCA found that this exception applied because Child's custodians denied Mother visitation, and that her petition for visitation, filed in June 2020, was sufficient legal action. COCA specifically found that Guardians acted on the advice of Child's therapist. However, COCA concluded that such an order could not count against the parent's ability to form the required relationship. Instead, COCA concluded that, under the statute, "a parent's denial-of-opportunity defense is not overcome by a custodian's evidence that their denial was based on reliable professional advice or any other good reason." COCA offered no citation to authority. This conclusion is not supported by either the language of the statute or case law. And it does not take into account the statute's overall emphasis on the best interests of the child.

¶23 The language of Section 7505-4.2(H)(2), describing the defense of denial by custodian, cannot be read narrowly or in isolation. COCA's analysis began and ended with the fact that Guardians denied Mother visitation. But the statute refers to a substantial and positive relationship with the child. This is not limited to visitation; visitation and communication are different things. As Mother herself admitted, she could have sent letters, cards, books or toys to foster a positive relationship. She could have, as she had been ordered to do, contacted Child's therapist. She could have contacted Guardians to explore other avenues of communication. The record does not show that Guardians prevented Mother from making any attempt at establishing a relationship, other than refusing visitation for Child's safety. Between late August 2019 and August 2020, when the petition for adoption was filed, Mother's only contact with Child was when she sent a birthday package. The trial court properly considered this when determining whether Guardians had denied Mother the opportunity for a substantial and positive relationship with Child.

¶24 To give effect to both the letter and spirit of the statute, we inquire into more than whether a custodian has denied a parent the opportunity for a substantial, positive relationship -- we ask why. A parent may be prevented from raising this defense to an adoption without consent if her actions or choices harm the child, resulting in an official recommendation or even prohibition against contact. This is determined case by case, reviewing the entire record. If, as happened here, the actual contacts between a mother and child are neither substantial nor positive, we will not find that a custodian's refusal of visitation denied the mother the opportunity for a substantial and positive relationship. G.D.J., 2011 OK 77, ¶ 26, 261 P.3d at 1166. And if a parent's intentional actions contradict or disregard her basic parental obligations, this may show she didn't intend to have a significant relationship with the child. C.D.M., 2001 OK 103, ¶ 17, 39 P.3d at 808 (fact of and reasons for incarceration are relevant to a court's consideration of whether parental consent is necessary).

¶25 The record shows that throughout Child's short life, his contacts with Mother were not positive. In the months immediately preceding the emergency guardianship, Mother was ordered to have no contact with Child. This order was dissolved by the guardianship. Child's adverse and self-harming response to a visit with Mother prompted Child's therapist to recommend no visitation. However, there was and is no prohibition against all contact. Mother could have explored other avenues to remain in Child's life. She chose not to do so. Clear and convincing evidence supports the trial court's conclusion that Guardians have met their burden to show that Mother failed to establish and/or maintain a substantial, positive relationship with Child.

Conclusion

¶26 Given the court order regarding support, we cannot find that Mother willfully failed to contribute to Child's support during the relevant time period. However, Mother failed to maintain a substantial and positive relationship with Child during that time. And the record supports the conclusion that adoption without Mother's consent is in the best interests of Child.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED;
CASE REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS.

CONCUR: Kane, C.J., Rowe, V.C.J., Winchester, Edmondson, and Kuehn, JJ.

DISSENT: Kauger, Combs, Gurich, and Darby (by separate opinion), JJ.

FOOTNOTES

[1] Father initially was granted Facetime visitation, but this also led Child to self-harm, and was ended on the advice of Child's counselor and guardian ad litem.

[2] By failing to respond to Guardians' Requests for Admissions in the adoption proceedings, Mother admitted that she made no request for supervised visitation until May 2020. Mother also admitted that she did not contact Child's therapist, as required by the standards, until July 2020; that she relapsed after her inpatient rehabilitation; that she had been arrested in Texas for driving under the influence while Child was in the vehicle; and that she had two other children who tested positive for drug exposure in utero at birth.

[3] The trial court noted that Mother's expenses included a cell phone. In the modern world, cell phones are a necessity, not a luxury; banking, job information, work communications, and other important information are routinely done by cell phone.

[4] Mother paid no support from August 2019, when Child was removed from her custody, through December 3, 2019, when the permanent guardianship was ordered. She paid $30 in May 2020 and $100 in August 2020. Mother did not provide support for any consecutive months during the relevant time period.

 

 

Darby, J., with whom Combs, J., joins, dissenting:

¶1 I respectfully dissent.

¶2 Despite accurately reciting the firmly established law that courts must strictly construe the statutes in a parent's favor, and recognizing that Oklahoma has enacted strict due process requirements in title 10, section 7505-4.2, the majority brushes off actually applying these legal demands and states: "That's not at issue here; Mother was afforded those protections." Majority Op. ¶ 11. I think not.

¶3 The majority notes that, under the statute, COCA concluded that "'a parent's denial of opportunity defense is not overcome by a custodian's evidence that their denial was based on reliable professional advice or any other good reason.'" Majority Op. ¶ 22. In other words, COCA would allow Mother in this case to raise the defense of denial of opportunity to form a positive relationship with Child. But the majority holds that: "This conclusion is not supported by either the language of the statute or case law." Id. Let us review the language of the statute as written.

¶4 Title 10, section 7505-4.2(H)(2) states:

In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.

10 O.S.2011, § 7505-4.2(H). Construing this provision "strictly" and "in parent's favor" we must conclude a parent need only "claim" denial of opportunity and then prove to the satisfaction of the court that they took "sufficient legal action" to establish the required relationship. The majority would require more from the parent than does the statute. The Court, in its opinion, goes behind the "claim" to investigate if the denial of opportunity was the parent's fault. In this case, Mother face-timed her child (all of 28 months old), after which the two-year-old threw a fit causing the counselor to allegedly forbid further contact of any kind between mother and child.[1] So, because a two-year-old threw one tantrum after face-time with Mother, she cannot claim she was denied her opportunity to form a good relationship with Child and then support her defense by proving she took sufficient legal action. And that's how the majority would "construe the statute strictly" and "strenuously protect" Mother's rights.

¶5 The majority references In re Adoption of G.D.J., 2011 OK 77, 261 P.3d 1159, and In re Adoption of C.D.M., 2001 OK 103, 39 P.3d 802, as authority for denying Mother the defense of claiming she was denied the opportunity to establish and/or maintain a substantial and positive relationship with Child.

¶6 In In re Adoption of C.D.M., the father claimed this defense but was denied by this Court because he caused the reason for the denial. The reason: Father was incarcerated for stalking and assaulting the mother and violating a victim's protective order entered to protect the child and its mother from the father's acts of violence. I do not see the comparison or relevance to mother in this case.

¶7 In In re Adoption of G.D.J., mother claimed this defense that she was prohibited from visiting or contacting child but her testimony "was not found credible by the trial court." In re Adoption of G.D.J., 2011 OK 77, ¶ 26, 261 P.3d, at 1166. The reasons the guardians denied mother visitation were: (1) she was in a drug rehabilitation facility, (2) she had a positive tuberculosis skin test, (3) after a phone call with mother, the guardians were concerned about her conditions and the child's best interest, (4) mother was at times in the presence of convicted felons, one of whom was a registered sex offender, (5) mother was arrested at the courthouse while in possession of the child, (6) she put child at risk of exposure to communicable diseases, and (7) during this time she had various criminal proceedings filed against her, along with outstanding bench warrants.

¶8 More importantly for our concerns, this Court in In re Adoption of G.D.J., after denying mother's defense of denial of opportunity, addressed whether mother took sufficient legal action to establish and/or maintain a substantial and positive relationship with the child. The Court held, "The record fails to demonstrate there was any action taken by Stubbs against the Pearsons during the relevant period based upon her being denied the opportunity to establish and/or maintain a substantial and positive relationship with G.D.J." Id., 2011 OK 77, ¶ 27, 261 P.3d, at 1167.

¶9 Of course, the Court must consider the best interest of Child. But best interest is to be considered along with the statutes, not instead of. "In addition to the statutory requirements, this Court has also required that the adoption and termination of parental rights be in the best interests of the child." In re Adoption of C.D.M., 2001 OK 103, ¶ 22, 39 P.3d, at 810. And in finding that consent of the natural parent is not required, the district court did not mention the best interest of the child even once. Yet the majority interprets the order to contain an "implicit" finding that Child's best interests were not served by visitation and an "inherent" finding that adoption without consent was in Child's best interests. See Majority Op. ¶ 12.

¶10 The law does not require us to strictly construe the statutes by only a best interest standard. Rather, we must construe the statutes strictly and in parent's favor --then also consider the best interests of the child. Justice Kauger, joined by Justice Opala in her concurring in part and dissenting in part opinion in In re Adoption of Baby Boy W., 1992 OK 58, ¶ 1 831 P.2d 643, 648 (Kauger, J., with whom Opala, C.J. joins, concurring in part and dissenting in part) said it best: " The result reached by the majority may arguably be in the best interest of the child, but it is not the law."

¶11 For the above reasons, I respectfully dissent.

FOOTNOTES

[1] But the record here also discloses an erroneous reliance on the finding of fact that child's "therapist recommended that all visitation should cease with the natural parents until appropriately addressed in therapy." Order 4, para. 16. The record does not support that finding in any way. Rather, the letters in the record from the child's therapist specifically stated that the therapist recommended all visitation with father should cease. See R. at 25, 44. There was no mention of Mother at all in those letters. R. at 25, 44. In fact, when Mother's attorney attempted to ask the guardian mother some questions about the counselor and her recommendations, Guardian's attorney objected for relevance. The following dialogue then occurred:

[MOTHER'S ATTORNEY]:Your Honor, we just have concerns that this counselor's never here to question, and her education is -- we would prefer a Ph.D, to assess this child if he truly has significant problems. And I'm just trying to ascertain if there's some kind of relationship or why this counselor particularly.

THE COURT: And I -- I certainly see the potential relevance in ultimate proceedings, but for the purpose of today's hearing, the AWOC hearing, I don't see the relevance, so the objection will be sustained.

R., Tr. of Application to Adj. the Minor Eligible for Adopt. without Consent of the Natural Parents 75:9--18. Mother's attorney had previously objected to guardian mother testifying about the contents of the counselor's recommendations as hearsay and noted concerns that the counselor had never been before the court to testify or be questioned about her recommendations. See id., at 69:5--12. The district court sustained the objection, but noted that the Court had "requested and actually ordered these -- the updates from the counselor, so the Court is on notice of what the recommendations are." Id., at 69: 13--16. The updates from the Counselor were not filed in the adoption case, but rather in the guardianship proceedings--and more importantly the Counselor's updates did not mention Mother in any way.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1992 OK 58, 831 P.2d 643, 63 OBJ 1381, 
Adoption of Baby Boy W., Matter of
Discussed

 
2001 OK 103, 39 P.3d 802, 72 OBJ 3648, 
IN RE ADOPTION OF C.D.M.
Discussed at Length

 
2007 OK 44, 162 P.3d 211, 
IN THE MATTER OF THE ADOPTION OF: M.J.S.
Discussed

 
2011 OK 77, 261 P.3d 1159, 
IN THE MATTER OF THE ADOPTION OF G.D.J.
Discussed at Length

 
2018 OK 1, 419 P.3d 204, 
IN THE MATTER OF THE ADOPTION OF M.A.S.
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA